**Viola PETERSON (Viola Smith), Appellant,**

v.

**Richard Martin PETERSON, Appellee.**

**No. 13118.**

Court of Civil Appeals of Texas, Austin.

Feb. 27, 1980.

Rehearing Denied April 2, 1980.

David Allan Smith, Austin, for appellant.

Frank D. Kerbow, Austin, for appellee.

PHILLIPS, Chief Justice.

Appellant Viola Peterson brought suit against Richard Martin Peterson, appellee, seeking a divorce and a division of the property of the parties. In particular, Mrs. Peterson claimed a community interest in the home purchased shortly after the wedding, relying first on the presumption that property acquired during the marriage is community, and alternatively, on the presumption that Mr. Peterson, by having Mrs. Peterson named as co-grantee in the deed, intended to make a gift to her of one-half of the property so conveyed. The trial court held that the property in question was the separate property of Mr. Peterson.

We affirm.

Inasmuch as appellant's points of error pertain to the legal and factual sufficiency of the evidence, we must review the evidence in its entirety.

Mr. and Mrs. Peterson, both of whom were in their fifties, were married on January 2, 1970. Approximately three months prior to the marriage they began shopping for a new home, and in November, 1969, a Standard Sales Contract was entered between Mr. Peterson and Crider-Layman Construction Company of Austin for the purchase of a house. At that time Mr. Peterson deposited a check for $2,000 with the builder, payable to Gracy Title Company, as earnest money. The sale closed on January 30, 1970, approximately one month after the parties were married. The deed named Richard M. Peterson and wife, Viola Peterson, as co-grantees. At the closing Mr. Peterson wrote a check payable to Gracy Title for $32,973.64, the balance of the purchase price.

At the trial Mr. Peterson testified that he paid the balance of the purchase price from his personal account, and that the check was drawn against a deposit in excess of $35,000 representing the proceeds from the sale of property which he had inherited from his mother. Further, Mrs. Peterson testified that she did not pay any of the purchase price from her separate funds.

On January 30, 1970, Mr. Peterson was notified that the sale would close that day. He testified that he phoned his wife to advise her of the closing, but that it was not necessary that she attend. It was at that point, according to Mr. Peterson, that he learned that his wife would not move into the house with him unless her name appeared on the deed. Mrs. Peterson testified to essentially the same facts, but she added that she told her husband that she would not move into the house unless she had a half-interest in the house.

Mr. Peterson testified that "I was real shocked. I didn't know what to do. I had just been married. I really didn't want to stir up any trouble at that early [stage] of a marriage . . . so I called . . . and asked . . . if we could get her name added to the deed right away . ." Mrs. Peterson's name was subsequently added to the deed and the sale was consummated. Mr. Peterson testified that he did not intend to make a gift to his wife of any interest in the house, but that he added her name to make her happy and to assure her that "she had a place to live the rest of her life," and "then at her death, it would be passed on to my children."

The trial court without aid of a jury found that the parties had acquired no community interest in the property. In the judgment the court stated:

"The Court finds that the entire purchase money for the property described in the deed to RICHARD M. PETERSON and VIOLA PETERSON dated January

30, 1970 . . . has been traced by clear and convincing evidence to the separate funds of RICHARD M. PETERSON. The presumption that property possessed by either spouse on the dissolution of a marriage is community property has been satisfactorily overcome by tracing with clear and convincing evidence the entire purchase money of the property herein described to the separate estate of the husband.

"The presumption of a gift created by the taking of title to real property in the name of husband and wife was rebutted by clear and convincing evidence establishing no intent to make a gift to the wife of any interest in the above described real estate."

Appellant, in her first point of error, contends that the trial court erred in finding that the parties' home was appellee's separate property because there was no evidence to overcome the community property presumption. Alternatively, appellant contends by her second and third points that such finding is against the great weight and preponderance of the evidence, and that the evidence is factually insufficient to support the court's finding. By her fourth point of error appellant complains that there was no evidence to support the court's finding that appellee had overcome the presumption that he had made a gift of one-half of the parties' home by naming appellant as co-grantee. Appellant also complains alternatively that such finding is against the great weight and preponderance of the evidence, and that the evidence is factually insufficient to support the court's finding.

■ We first note that the parties tried this case on the theory that property possessed by either spouse on the dissolution of a marriage is community property, and that appellee attempted to overcome the presumption by tracing the purchase price of the house to his separate funds. Although appellee entered into the contract for the purchase of the property prior to his marriage, he did not rely on the well-established rule that "existence or non-existence of the marriage at the time of incipiency of the right by which title finally vests determines whether the property is community or separate." *Creamer v. Briscoe*, 101 Tex. 490, 109 S.W. 911 (1908); *Williamson v. Williamson*, 457 S.W.2d 311 (Tex.Civ.App.— Austin 1970, no writ). Although we are of the opinion that this rule would be applicable since appellee's "right" to the property originated before the marriage, this theory has not been presented and is not before this Court.

Before reaching a determination of appellant's points, we will first respond to a contention contained in appellee's brief. Appellee points out that findings of fact and conclusions of law were not requested or filed, and, citing cases, appellee contends that the judgment of the trial court should be affirmed if it can be upheld on any legal theory that finds support in the evidence.

■ The basis of this rule is that the court of civil appeals must affirm in the absence of findings of fact if the judgment can be sustained under any theory in the case. In the case at bar, the trial court's judgment contains specific recitals of facts and conclusions, stated above, and the court rendered judgment based upon such findings. Although Rule 296, Texas Rules of Civil Procedure, authorizes the trial court to file conclusions of fact and law at the request of either party, this practice is not mandatory. If the findings are contained in the judgment, the underlying purpose of Rule 296, to allow the court to explain the theories supporting the judgment, has been satisfied. *Cottle v. Knapper*, 571 S.W.2d 59 (Tex.Civ.App.—Tyler 1978, no writ); *Davis v. Davis*, 507 S.W.2d 841 (Tex.Civ.App.— Houston [14th Dist.]), *reversed on other grounds*, 521 S.W.2d 603 (Tex.1975). We will therefore proceed to a determination of appellant's points of error.

■ In determining the "no evidence" points, we are required to consider only that evidence and those inferences that will support the court's findings in a light most favorable to such findings, and must reject all evidence and inferences contrary to findings of the trial court. *Garza v. Alviar*, 395

S.W.2d 821 (Tex.1965). Appellant's alternative points require us to consider all the evidence in the record, including that which is contrary to the verdict. *Fisher Construction Co. v. Riggs*, 160 Tex. 23, 325 S.W.2d 126 (1959); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex.L.Rev. 361 (1960).

In *Tarver v. Tarver*, 394 S.W.2d 780 (Tex. 1965), the Supreme Court of Texas restated the basic presumption that all property possessed by a husband and wife upon dissolution of their marriage is community property. Tex.Family Code Ann. § 5.02 (1975). *Tarver* provides that to discharge the burden imposed by the statute, a spouse must trace and clearly identify the property claimed as separate property.

Our courts have varied between a strict and lenient application of the tracing rules. In *McKinley v. McKinley*, 496 S.W.2d 540 (Tex.1973), the Supreme Court applied the principles of tracing to a savings account. In that case Mr. McKinley had on deposit $9,500 of his separate funds in a savings account, earning interest, until the account balance was $10,453.81. Mr. McKinley thereafter withdrew $10,400 to purchase a savings certificate. The Supreme Court held that the $9,500 was clearly identified as separate property. This case has been described as the "most liberal tracing case that we have seen." *Latham v. Allison*, 560 S.W.2d 481 (Tex.Civ.App.—Fort Worth 1977, writ ref'd n. r. e.).

In the case at bar Mr. Peterson testified that he sold inherited property and deposited funds in excess of $35,000 into his personal bank account. He subsequently paid the balance of the purchase price from that same account. Appellant argues that no evidence was introduced to establish the beginning balance of that account on the date of marriage or to establish what deposits or withdrawals were made between the date of the marriage and the date of closing.

■ In reviewing appellant's "no evidence" point, after examining only that evidence in favor of the trial court's finding, we find probative evidence to support the trial court's finding that the community property presumption was overcome by tracing the entire purchase price to appellee's separate funds. In viewing the evidence in its entirety, we also find sufficient evidence to support the trial court's finding, and that the finding is not against the great weight and preponderance of the evidence. Mr. and Mrs. Peterson were married less than one month when Mr. Peterson made the payment from his personal account. Although Mrs. Peterson testified that she desired an interest in the house, under cross-examination she admitted that her only financial interest would be in maintaining the home—landscaping, furniture, etc.

Relying upon *McKinley v. McKinley, supra*, we hold that appellee has traced the $32,973.64 to his separate property.

■ With respect to the deed wherein title to the property was taken in both names, we are faced with this presumption: when a husband uses separate property consideration to pay for land acquired during the marriage and takes title to the land in the name of the husband and wife, it is presumed he intended the interest placed in the wife to be a gift. *Cockerham v. Cockerham*, 527 S.W.2d 162 (Tex.1975); *Hampshire v. Hampshire*, 485 S.W.2d 314 (Tex. Civ.App.—Corpus Christi 1973, no writ). The presumption is rebuttable, and parol evidence is admissible to show that a gift was not intended. *Galvan v. Galvan*, 534 S.W.2d 398 (Tex.Civ.App.—Austin 1976, writ dism'd).

■ In the instant case Mr. Peterson testified that he added his wife's name to the deed merely to consummate the sale. He said that he wanted to avoid any trouble at the early stage of his marriage, and wanted to accommodate his wife. He testified that he did not intend to give his wife a one-half interest in the home.

Mrs. Peterson, on the other hand, testified that she would not move into the house unless her name was on the deed. She also testified that she wanted a half-interest in the home, but offered no testimony that her

husband meant to make a gift to her. She merely testified as to her own intentions. A review of events of the day of closing, January 30, 1970, evidences that Mr. Peterson had omitted his wife's name from the deed, and then only added her name at her insistence after she refused to go through with the purchase.

The trial court found that Mr. Peterson had overcome the presumption that he intended to make a gift of one-half interest in the house. Considering appellant's "no evidence" point, and reviewing only that evidence which supports the trial court's finding, we find some evidence to uphold the finding. Upon review of the record in its entirety, we further find sufficient evidence to uphold the finding, and that the finding is not against the great weight and preponderance of the evidence. Appellant's final three points of error are overruled.

The judgment of the trial court is affirmed.

Affirmed.

SMITH, J., not sitting.