COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS





GABRIEL JUAN LONG,

                                    Appellant,

v.

DANALYN MARIE LONG,

                                    Appellee. 

§
 
§
 
§
 
§
 
§

§


No. 08-05-00250-CV

Appeal from
380th District Court

of Collin County, Texas

(TC # 380-51905-04)




 

 

 




O P I N I O N

            This is an appeal from a final decree of divorce in which characterization of property is at
issue. The dispute centers on lake property purchased during marriage with the husband’s separate
funds. Finding no error, we affirm.
FACTUAL SUMMARY
            Gabriel and Danalyn Long were married on May 26, 1998. At the time of the marriage, Gabe
was employed by Perot Systems, Inc. The parties stipulated that Gabe was granted stock options
prior to marriage, that the options vested prior to marriage, and that they were exercised after
marriage. From a total grant of 600 shares, Gabe sold 400 shares to pay the option price and netted
200 shares of Perot Systems stock. He then traded the Perot stock for Cisco shares which were then
sold for $146,500. Counsel for both parties represented to the court that the sales proceeds were
Gabe’s separate property. Of this sum, $138,000 was used to purchase a lake lot. Gabe claimed the
lot in its entirety as separate property. Danalyn claimed an undivided one-half interest in the lot as
her separate property, claiming that by using his separate funds and taking title in both parties’
names, Gabe had manifested an intent to make a gift. In findings of fact and conclusions of law, the
trial judge found that Gabe’s separate property was spent to purchase the lot, that Gabe gifted an
undivided one-half interest in the lot to Danalyn, and that the value of the lot was $175,000. The
court likewise entered conclusions of law that each spouse owned an undivided one-half interest as
separate property. When asked whether he preferred to sell the lot and divide the proceeds, Gabe
elected to purchase Danalyn’s interest for $87,500. 
THE PRESUMPTIONS
            All property on hand at the dissolution of marriage is presumed to be community property. 
Tate v. Tate, 55 S.W.3d 1, 4 (Tex.App.--El Paso 2000, no pet.); Tex.Fam.Code Ann. § 3.003(a)
(Vernon 2006). It is a rebuttable presumption, requiring a spouse claiming assets as separate
property to establish their separate character by clear and convincing evidence. Id.; Tex.Fam.Code
Ann. § 3.003(b). Property owned before marriage, or acquired during marriage by gift, devise or
descent, is separate property. Id.; Tex.Fam.Code Ann. § 3.002. Where an asset is purchased during
marriage with monies traceable to a spouse’s separate estate, the asset may appropriately be
characterized as separate property. Pace v. Pace, 160 S.W.3d 706, 711 (Tex.App.--Dallas 2005,
pet.denied). 
            A second presumption arises from the facts here. Where one spouse uses separate funds to
purchase property during marriage and takes title to the property in joint names, we presume that a
gift to the spouse is intended. In re Marriage of Morris, 12 S.W.3d 877, 881 (Tex.App.--Texarkana
2000, no pet.), citing Cockerham v. Cockerham, 527 S.W.2d 162, 168 (Tex. 1975). This
presumption may be rebutted by parol evidence establishing that no gift was intended. Cockerham,
527 S.W.2d at 168. A rebuttable presumption “shift[s] the burden of producing evidence to the party
against whom it operates.” Lide v. Lide, 116 S.W.3d 147, 152 (Tex.App.--El Paso 2003, no pet);
In the Interest of Rodriguez, 940 S.W.2d 265, 271 (Tex.App.--San Antonio 1997, writ denied), citing
General Motors Corp. v. Saenz, 837 S.W.2d 353, 359 (Tex. 1993). Once that burden is discharged
and evidence contradicting the presumption has been offered, the presumption disappears and is not
weighed or treated as evidence. General Motors Corp., 837 S.W.2d at 359. The evidence is then
evaluated as it would be in any other case, and the presumption has no effect on the burden of
persuasion.
CHARACTERIZATION
            In his first issue for review, Gabe complains that the trial court failed to characterize the lake
lot as community property. In his second issue, Gabe challenges the court’s finding that he gifted
a one-half interest to his wife. 
Framing the Issues
            An appeal directed toward demonstrating an abuse of discretion is one of the tougher
appellate propositions. Most of the appealable issues in a family law case are evaluated against an
abuse of discretion standard, be it the issue of property division incident to divorce or partition,
conservatorship, visitation, or child support. While the appellant may challenge the sufficiency of
the evidence to support findings of fact, in most circumstances, that is not enough. If, for example,
an appellant is challenging the sufficiency of the evidence to support the court’s valuation of a
particular asset, he must also contend that the erroneous valuation caused the court to abuse its
discretion in the overall division of the community estate. Here, however, we are asked to review
an alleged characterization error. We must determine not only whether the trial court’s finding of
separate property is supported by clear and convincing evidence, we must also determine whether
the characterization error, if established, caused the trial court to abuse its discretion. These two
prongs require first, a showing of error, and second, a showing that the error was harmful. 
Tex.R.App.P. 44.1(a)(1)(no judgment may be reversed on appeal on the ground that the trial court
made an error of law unless the court of appeals concludes that the error complained of probably
caused the rendition of an improper judgment).
            Three fact scenarios establish the appropriate structure of an appellant’s characterization
contention. First, suppose Wife claims Blackacre is her separate property and Husband claims the
asset is community property. Second, suppose the trial court characterizes it as community property
and awards it to Wife. On appeal, Wife must establish error; she must challenge that the
characterization is against the great weight and preponderance of the evidence [a factual sufficiency
complaint] or that separate property status was established as a matter of law [a legal sufficiency
complaint]. She must also establish that the characterization error was harmful-because of the
mischaracterization, the overall division of property constitutes an abuse of discretion. In re
Marriage of Morris, 12 S.W.3d at 884 (mere mischaracterization of separate property as community
property does not require reversal; it is appellant’s burden to prove that any disparity in the division
was caused by the mischaracterization of property and that it was of such substantial proportions that
it constituted an abuse of the trial court’s discretion); Magill v. Magill, 816 S.W.2d 530, 533
(Tex.App.--Houston [1st Dist.] 1991, writ denied)(accord).
            Now suppose that given the same fact pattern, the trial court characterizes Blackacre as
Wife’s separate property and awards it to her. This time, Husband appeals. He must first establish
error by challenging the legal or factual sufficiency of the evidence to support the separate property
characterization. He must also conduct a harm analysis-because of the mischaracterization, the
overall division of property constitutes an abuse of discretion. Vandiver v. Vandiver, 4 S.W.3d 300,
302 (Tex.App.--Corpus Christi 1999, pet. denied)(mischaracterization of community property as
separate property is not reversible unless the mischaracterization had more than a de minimus effect
on the just and right division).
            It is only in the third scenario that reversible error exists as a matter of law. In this example,
Wife claims Blackacre is separate property and Husband claims it is community property. The trial
court characterizes it as community property and awards it to Husband. If Wife can establish that
Blackacre is her separate property, it is unnecessary to show harm because divestiture of separate
property is reversible error. Eggemeyer v. Eggemeyer, 554 S.W.2d 137, 140 (Tex. 1977); In re
Marriage of Morris, 12 S.W.3d at 881. In this singular instance, there is no need to demonstrate that
the overall property division constitutes an abuse of discretion.
Standards of Review
            We may review a trial court’s findings of fact for both legal and factual sufficiency. BMC
Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002); Catalina v. Blasdel, 881
S.W.2d 295, 297 (Tex. 1994). In a traditional legal sufficiency review, we consider the evidence
and inferences that tend to support the findings and disregard all evidence and inferences to the
contrary. Bernal v. Chavez, 198 S.W.3d 15, 18 (Tex.App.--El Paso 2006, no pet.); Catalina, 881
S.W.2d at 297. If any probative evidence supports the factual finding, it must be upheld. Bernal,
198 S.W.3d at 18. In conducting a traditional factual sufficiency review, we consider all the
evidence, including that which tends to prove the existence of a vital fact in addition to evidence
which tends to disprove its existence. Id. The trial court’s finding of fact must be so against the
great weight and preponderance of the evidence as to be manifestly wrong. Id. The trier of fact
determines the weight to be given to the testimony and resolves any conflicts in the evidence. Id. 
at 19.
            But traditional sufficiency review is heightened when the burden of proof is clear and
convincing evidence. In re J.F.C., 96 S.W.3d 256, 266-67 (Tex. 2002); In re C.H., 89 S.W.3d 17,
25 (Tex. 2002). In a legal sufficiency review, we look at all the evidence in the light most favorable
to the fact finding to determine whether a reasonable trier of fact could have formed a firm belief or
conviction that the finding was true. In re J.F.C., 96 S.W.3d at 266. In so doing, we must assume
that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do
so. Id. We should disregard all evidence that a reasonable fact finder could have disbelieved or
found to be incredible, but this does not mean that we must disregard all evidence that does not
support the finding. Id. If we determine that no reasonable fact finder could form a firm belief or
conviction that the fact is true, then we must conclude that the evidence is legally insufficient. Id. 
In a factual sufficiency review, we must give due consideration to evidence that the fact finder could
reasonably have found to be clear and convincing. Id., citing In re C.H., 89 S.W.3d at 25. We are
to consider whether disputed evidence is such that a reasonable fact finder could not have resolved
the dispute in favor of its finding. Id. “If, in light of the entire record, the disputed evidence that a
reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder
could not reasonably have formed a firm belief or conviction, then the evidence is factually
insufficient.” In re J.F.C., 96 S.W.3d at 266.
Inception of Title
            Gabe has not and does not dispute that the lake lot was purchased with his separate funds. 
He pled it, he stipulated to an agreed statement of facts, he argued it to the trial court, and his brief
in this court clearly states:
A summary of the undisputed evidence conclusively established the following:
* * * * *
6. The total consideration for the purchase price was paid with the separate funds of
the Appellant. 

Nevertheless, he complains that the trial court failed to apply the inception of title doctrine in order
to determine that the lake lot was community property. In short, he argues that since the lot was
purchased during marriage, the community presumption prevails and he had a mere right of
reimbursement for separate funds used in the purchase. We must disagree. All of the evidence,
every shred of it, establishes that Gabe spent separate monies to buy the lot. We are not persuaded
by his argument that the characterization of the property did not change from community to separate
simply because he purchased the lot with separate funds and added Danalyn’s name to the deed. The
real issue is whether he intended to make a gift to his wife of an undivided one-half interest. If the
evidence supports the trial court’s finding, then Gabe owns one-half of the lot as his separate
property and Danalyn owns one-half of the lot as her separate property. Because a gift by definition
constitutes separate property, there can be no gift to the community estate. Jones v. Jones, 804
S.W.2d 623, 627 (Tex.App.--Texarkana 1991, no writ); Higgins v. Higgins, 458 S.W.2d 498
(Tex.Civ.App.--Eastland 1970, no writ). We overrule Issue One.
 

Was There a Gift?
            A gift is a voluntary transfer of property to another made gratuitously and without
consideration. Hilley v. Hilley, 161 Tex. 569, 342 S.W.2d 565, 569 (1961); Roberts v. Roberts, 999
S.W.2d 424, 431 (Tex.App.--El Paso 1999, no pet.). Three elements are required to establish the
existence of a gift: (1) intent to make a gift; (2) delivery of the property; and (3) acceptance of the
property. Harrington v. Bailey, 351 S.W.2d 946 (Tex.Civ.App.–Waco 1961, no writ). Without
intent, there is no gift. Similarly, the intent must exist at the time of the transfer, not at the time of
a subsequent divorce. Rusk v. Rusk, 5 S.W.3d 299, 303 (Tex.App.--Houston [14th Dist.] 1999, pet.
denied), citing Ellebracht v. Ellebracht, 735 S.W.2d 658, 659 (Tex.App.--Austin 1987, no writ). 
A gift by one spouse to the other may be set aside if induced by duress or undue influence. Roberts,
999 S.W.2d at 431. Once that claim is made, the burden shifts to the donee to establish that the gift
was fair and equitable. Id. Thus, Gabe bore the burden to plead and prove by clear and convincing
evidence that the lake lot was purchased with separate property. This he did. The deed created a
rebuttable presumption of gift because it was purchased with his separate property and title was taken
in both names. The presumption vanished when Gabe testified that he did not intend to make a gift. 
Danalyn then had the burden to establish, by clear and convincing evidence, that a gift was intended. 
We review the evidence with these principles in mind.
            At trial, Gabe testified he did not intend to make a gift.
Q: Now at the time that you -- why did you agree to put her name on the contract and
not the deed to begin with?
 
A: Because she asked me and I sure didn’t want any turmoil at the house.
 
Q: Did you intend for this to be a gift to her?
 
A: No, I did not intend for it to be a gift. If she would have left me the next day, I
would have never gifted her the land. 

He was then impeached with his deposition testimony that there was no reason to believe he and his
wife were not the owners of the property. The following exchange then occurred:
Q: All right. You testified that there is no reason. I asked is there any reason to
believe that you and your wife are not owners of that property and you said no, and
now there is a reason?
A: Sir, at the time, I don’t know all these legal issues. She asked me that she’d like
to put her name on there, we put her name on there. I don’t know any legal
ramifications. I said yes. I don’t want no turmoil. I love her, we did it. Now, is my
intent if she left me the next day just to gift her half the property? Absolutely not, but
I thought part of marriage was -- if she had her name, if I die, in the future our
children and we live there, sure, it’s hers. 
 
Q: You keep saying it’s not your intention to gift it if you had known she’d leave you
the next day. Well, she didn’t leave you the next day, did she?
 
A: No, but she left me six years later, but it’s still not my intent to gift her half the
property.
 
Q: And even though --
 
A: Sir, if you’re asking me do I know the difference now between community and
separate, absolutely. Did I know the leal ramifications then? No. I thought what
was hers is mine and mine is hers. I didn’t question. She just asked me if she could
put her name and we went there the next time and we put her name.

            Danalyn testified on the issue as well. The couple had been looking for property and located
the lot in question. The owner waited for several months but Perot had not gone public. The owner
ultimately accepted another offer and the Longs lost the property. When Perot went public and the
stock options were exercised, the Longs wrote letters to owners in the area who had not yet built on
the lots. The then-current owner of the lot they had previously liked called Danalyn to inquire if they
were still interested in buying. Gabe met with the seller and explained the arrangements to his wife:
A: ‘Yes, he’s agreed to sell it to us. Here’s the date, here’s the title company,’ who
we used to sell his house; the title company, we’re going to go there. Well, before
we went to it I said, ‘Well, we had a discussion,’ and I said, ‘Well, wait a minute. 
You know, I think I saw some paperwork, something, and my name wasn’t on there.’ 
And I said, ‘Wait a minute. Is this your land, is this going to be your land and your
house or is this going to be our land and our house because we’ve done all this
together?’
 
And he said, ‘No, no, please come. This is ours, this is ours,’ and so when we went
there. He requested that I have my name put on there because this was going to be
ours. 
 
 Q: And did you also ask to have your name put on the title, the deed, the warranty
deed?
 
A: Yes. Well, it was -- I mean I wanted to be part of the land. I wanted it to be both
of ours, so yes . . . 
* * * * *
 
Q: Did Gabe ever tell you or intimate in any way, that hey, I’m putting up the money
for this, I think it’s my money, and you’re not part of it?
 
A: No. It was always ours. 

According to Danalyn, the plan was to build their home and live there, rather than in the home that
Gabe owned before the marriage. She met with the architect and the interior designer to develop the
plans “because this was our house, this was our dream.” 
            Without question, there is conflicting evidence, not only between Gabe and Danalyn but also
between Gabe’s trial testimony and his deposition testimony. As is frequently the case, gifts made
during marriage generally do not seem like such a good idea when the marriage crumbles. Gabe
relies on Peterson v. Peterson, 595 S.W.2d 889, 890 (Tex.Civ.App.--Austin 1980, pet. dism’d) for
the proposition that he sufficiently rebutted the presumption of gift. There, Mr. Peterson purchased
a home using his separate funds during the marriage. On the day of the closing, Mr. Peterson phoned
his wife to tell her he didn’t think it was necessary for her to attend. Id. Mrs. Peterson refused to
move into the home unless her name appeared on the deed. Id. At the time of divorce, Mr. Peterson
testified he merely added his wife’s name to the deed in order to consummate the sale because he
wanted to accommodate his wife and did not want to cause any trouble during the early stage of his
marriage. Id. at 892. He added her name to make her happy and assure her that “she had a place to
live the rest of her life” and “then at her death, it would be passed on to my children.” Id. at 890. 
The court of appeals determined there was legally sufficient evidence to support the trial court’s
ruling that Mr. Peterson did not intend to make a gift to his wife. Id. at 893. Therein lies the
distinction. The trial court believed Mr. Peterson’s testimony and concluded he had satisfactorily
rebutted the presumption. Applying the appropriate standard of review, the court of appeals
affirmed. Had the trial court determined Mr. Peterson did not rebut the presumption, the appellate
court could just as easily have affirmed. A factual sufficiency review, particularly under the standard
applied in 1980, gave great credence to the fact finder and his or her discretion in determining the
weight and credibility to be accorded to the testimony. We do not perceive Peterson as controlling. 
            We have reviewed all of the evidence in the light most favorable to the gift finding and
conclude that a reasonable trier of fact could have formed a firm belief or conviction that a gift was
intended. In re J.F.C., 96 S.W.3d at 266. We have assumed that the trial court resolved disputed
facts in favor of the gift and that a reasonable fact finder could do so. Id. We have disregarded all
evidence that a reasonable fact finder could have disbelieved or found to be incredible. Id. We
therefore conclude that the evidence is legally sufficient. Id. In our factual sufficiency review, we
have given due consideration to evidence that the fact finder could reasonably have found to be clear
and convincing. Id., citing In re C.H., 89 S.W.3d at 25. We have considered whether the disputed
evidence is such that a reasonable fact finder could not have resolved the dispute in favor of its
finding. Id. In light of the entire record, the evidence is such that a fact finder could reasonably have
formed a firm belief or conviction that a gift was intended. We thus conclude the evidence is
factually sufficient. We next address two corollaries to Gabe’s second issue. 
Deemed Findings
             Gabe first complains that the trial court made no specific fact findings on the underlying
elements required to establish a gift. The court found that the lake lot was purchased with Gabe’s
separate funds, that both names were included on the sales contract and the deed, and that Gabe
gifted an undivided one-half interest to Danalyn. Gabe did not request additional or amended
findings. When the trial court gives express findings on at least one element of a claim, implied
findings on the omitted unrequested elements are deemed to have been made in support of the
judgment. In other words, if a party secures an express finding on at least one element of a claim,
then deemed findings arise as to the balance of the elements. Lindner v. Hill, 691 S.W.2d 590 (Tex.
1985); Dunn v. Southern Farm Bureau Casualty Insurance Co., 991 S.W.2d 467 (Tex.App.--Tyler
1999, pet. denied); Sears, Roebuck & Co. v. Nichols, 819 S.W.2d 900 (Tex.App.--Houston [14th
Dist.] 1991, writ denied). Where deemed findings arise, it is not an appellee’s burden to request
further findings or to complain of other findings made. It is the appellant’s duty to attack both the
express and implied findings. The trial court’s finding that Danalyn’s name was included on the
contract and the deed with Gabe’s consent and approval relates to two elements necessary to
establish a gift--delivery of the property and acceptance of the property. Intent is an implied finding
subject to evidentiary attack. Gabe has attacked the sufficiency of the evidence as to intent, but he
has waived any error with regard to the trial court’s failure to make a specific finding on that issue. 


Continued Viability of the Presumption
            Finally, Gabe traces the history of the gift presumption and challenges its continued viability. 
He notes that the rationale for the presumption was the fact that a husband had both the legal and
moral obligation to support his wife, that the wife had limited rights under the law, and that one
spouse cannot make a gift to the community. With the enactment of the transmutation statutes,
spouses now have expanded options in dealing with their financial resources. Section 4.202 permits
spouses by written agreement to convert separate property to community property. See
Tex.Fam.Code Ann. Title 1, Chapter 4, Subchapter C, § 4.201 et. seq., added by Acts 1999, 76th
Leg., R.S., ch. 692, § 3, eff. Jan. 1, 2000. The change in the law required a constitutional
amendment, which was approved on November 2, 1999. Proponents of the new statutes lauded the
tax benefits while opponents cautioned that unscrupulous individuals would take advantage of
unwitting spouses. While Gabe’s argument is intellectually stimulating, it is inapplicable here. At
the time the lot was purchased--October 8, 1999--any interest conveyed to Danalyn would
necessarily be separate property. Conveyance of Gabe’s separate property to the community estate
was unconstitutional at the time.
            We overrule Issue Two. Having overruled both issues for review, we affirm the judgment
of the trial court. 

February 15, 2007                                                       
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Barajas, C.J. (Ret.)
Barajas, C.J. (Ret.), sitting by assignment, not participating