

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-25-00011-CV
_____

IN THE MATTER OF THE MARRIAGE OF FRANCES
GILLIAN THATCHER AND NICOLAS LEE THATCHER

On Appeal from the 53rd District Court
Travis County, Texas[1]
Trial Court No. D-1-FM-23-007593, Honorable Maria Cantú Hexsel, Presiding

August 18, 2025

MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Appellant, Nicolas Lee Thatcher, appeals the trial court's final decree of divorce, which ended his marriage with appellee, Frances Gillian Thatcher.[2]  Specifically, he challenges the property division contained within the decree.  We affirm in part and reverse and remand in part.

---

[1] This cause was originally filed in the Third Court of Appeals and was transferred to this Court by a docket-equalization order of the Supreme Court of Texas.  *See* TEX. GOV'T CODE ANN. § 73.001.  In the event of any conflict, we apply the transferor court's case law.  TEX. R. APP. P. 41.3.

[2] Because the principal parties share the same last name, we will refer to them by their first names.

FACTUAL AND PROCEDURAL BACKGROUND

Nicolas and Frances married on June 17, 2017.  They moved to Texas from the United Kingdom, primarily to pursue investment opportunities in Austin real estate.

In 2018, Frances's parents gave her and her brother approximately £250,000 each.  Frances's parents memorialized that this transfer was a gift by letter.  Frances subsequently transferred £214,000 of this gift money to a joint account she shared with Nicolas.  At the time of this transfer, the exchange rate was $1.29 per £1, so Frances's transfer was just more than $248,000.  These funds were used at closing to purchase 97.19 percent of the purchase price for real property located at 1612 Webberville Road in Austin ("the Webberville property").  On the advice of an immigration attorney, the purchase and title documents were taken in Nicolas's name only.

In December of 2019, by informal agreement, Nicolas, Frances, and Frances's father, Gavin Rennie[3] purchased real property located at 1139½ Gunter Street in Austin ("the Gunter property").  No written contract established the terms of the co-ownership of the Gunter property.  However, Gavin testified that the agreement was that he would make a fifty percent down payment on the property and would own fifty percent of the property.[4]  However, in contrast, Gavin signed a letter on November 4, 2019, that stated that $376,000 toward the purchase of the Gunter property was a gift and that "no repayment of this gift is expected or implied . . . ."  Nicolas explained to Gavin that it would facilitate the purchase of the Gunter property to only include Nicolas and Frances on the

---

[3] Gavin intervened in this case claiming a fifty percent interest in the Gunter property.

[4] Nicolas and Frances were to take out a mortgage for the remaining fifty percent of the property.

2

title[5] but that after the transaction was completed, he would amend the title to add Gavin. While Gavin was never added to the title of the Gunter property, Nicolas did provide Gavin profit and loss statements for maintenance and rental activities involving the Gunter property as well as paying Gavin $14,000 as Gavin's portion of rental income from the property as late as March of 2024.

In June of 2020, Nicolas and Frances formed a real estate holding company named ATX Family Holdings, LLC. Nicolas and Frances were the only members and each held a fifty percent interest in the business. On June 17, 2020, Nicolas and Frances capitalized the LLC with the Webberville property.[6] Frances signed a spousal acknowledgment as part of this transfer, which stated that she was waiving her "right, title[,] and interest" in the property. In 2023, Nicolas and Frances transferred the Webberville property out of ATX and back into their individual names and then sold the property. The full amount of the proceeds of this sale was deposited into an account that is solely in Nicolas's name and control. Nicolas used these funds to make subsequent purchases and to pay bills.

In October of 2023, Frances filed for divorce in Travis County. Frances claimed that much of the property possessed by the parties was her separate property and, as to the community property, her separate estate held a right to reimbursement. At the subsequent hearing, both Nicolas and Frances offered the testimony of expert witnesses

---

[5] Gavin testified that Nicolas specifically requested that Gavin sign the gift letter because doing so "was the only way [Nicolas and Frances] could facilitate the mortgage."

[6] In his brief, Nicolas states that the parties conveyed the Gunter property to ATX as its initial capitalization. However, this appears to be an error since the cited quitclaim deed transferred the Webberville property.

3

regarding the character of property acquired during the marriage. During testimony, Nicolas admitted to violating the court's temporary orders by transferring funds from a particular bank account.

By his appeal, Nicolas presents nine issues. His first seven issues challenge the trial court's characterization of funds derived from the sale of the Webberville property as Frances's separate property. Nicolas's eighth issue contends that the trial court erred in finding that Gavin Rennie owned fifty percent of the Gunter property. Nicolas's final issue contends that the trial court abused its discretion by disproportionately dividing the community estate.

## STANDARD OF REVIEW

In a decree of divorce, a trial court must order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party. TEX. FAM. CODE ANN. § 7.001. The court may divide only the spouses' community property. *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985). Community property is property, other than separate property, acquired by either spouse during marriage. TEX. FAM. CODE ANN. § 3.002. Property of a spouse owned before marriage as well as property acquired during marriage by gift, devise, or descent is the separate property of that spouse. TEX. CONST. art. XVI, § 15; TEX. FAM. CODE ANN. § 3.001(1), (2).[7] It is presumed that property possessed by either spouse during or on dissolution of marriage is community property rather than separate property. § 3.003(a). A party claiming that

---

[7] Further references to provisions of the Texas Family Code will be by reference to "section ___" or "§ ___."

4

property is separate property must prove the necessary facts by clear and convincing evidence. § 3.003(b). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007. When the burden of proof at trial is by clear and convincing evidence, we apply a higher standard of legal and factual sufficiency review. *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). In a legal sufficiency review, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *Id.* We will sustain a factual insufficiency point only if the factfinder "could not have reasonably found the fact was established by clear and convincing evidence." *Tate v. Tate*, 55 S.W.3d 1, 5 (Tex. App.—El Paso 2000, no pet.).

A trial court's characterization of property and division of a marital estate is reviewed for abuse of discretion. *In re Marriage of Stegall*, 519 S.W.3d 668, 673 (Tex. App.—Amarillo 2017, no pet.). A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules and principles. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011). However, the mere fact that a trial judge may decide a matter within its discretionary authority in a different manner than an appellate judge would in a similar situation does not demonstrate that an abuse of discretion has occurred. *Sw. Bell Tel. Co. v. Johnson*, 389 S.W.2d 645, 648 (Tex. 1965) (citing *Jones v. Strayhorn*, 321 S.W.2d 290, 295 (Tex. 1959)). When there is any doubt as to the character of property, in light of the community presumption, we should resolve that doubt in favor of the community. *Akin v. Akin*, 649 S.W.2d 700, 703 (Tex. App.—Fort Worth 1983, writ ref'd n.r.e.).

When we review a family law case under the abuse of discretion standard, challenges to the sufficiency of the evidence do not constitute independent grounds of error but are relevant factors in determining whether the trial court abused its discretion. *Van Hooff v. Anderson*, No. 07-14-00080-CV, 2016 Tex. App. LEXIS 466, at *8 (Tex. App.—Amarillo Jan. 14, 2016, no pet.) (mem. op.) (citing *Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.)). In determining whether the trial court abused its discretion by deciding an issue without sufficient evidentiary support, "we engage in a two-pronged inquiry: (1) did the trial court have sufficient evidence upon which to exercise its discretion, and (2) did the trial court err in its application of that discretion[.]" *Boyd*, 131 S.W.3d at 611. When, as here, findings of fact and conclusions of law are not filed or requested, it is implied that all necessary findings were made by the trial court to support its judgment. *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989) (per curiam). "In determining whether some evidence supports the judgment and the implied findings of fact, it is proper to consider only that evidence most favorable to the issue and to disregard entirely that which is opposed to it or contradictory in its nature." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam) (internal quotation marks omitted). The trial court's judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *Id.*

**ISSUES ONE, TWO, FOUR, FIVE, SIX, AND SEVEN: CHARACTERIZATION OF PROPERTY**

By his first seven issues, Nicolas contends that the trial court abused its discretion in determining that certain funds were traceable as Frances's separate property. We will address issue three separately below. Frances contends that she proved that 97.19 percent of the Webberville property was traceable as her separate property and,

6

therefore, 97.19 percent of the proceeds of the sale of the Webberville property were correctly characterized as her separate property by the trial court.

As previously mentioned, all property owned at the dissolution of a marriage is presumed to be community property. § 3.003(a). However, this presumption can be rebutted by clear and convincing evidence that the subject property is separate property. § 3.003(b). Separate property is property owned prior to marriage or acquired during marriage through gift, devise, or descent. § 3.001.

Frances introduced evidence that the initial purchase money for the Webberville property was a gift to her from her parents. While Nicolas presented evidence in an attempt to cast doubt on whether these funds were a gift, clear and convincing evidence established that these funds were gifted to Frances. This evidence includes a gift letter signed by Frances's parents indicating that they were gifting £250,000 each to Frances and her brother, testimony from Nicolas's own expert that approximately £250,000 was transferred from Gavin's account to an account Frances jointly held with Nicolas, and even Nicolas acknowledged that the funds were a gift from Frances's parents.[8] We conclude that this constitutes clear and convincing evidence that Frances's parents intended to gift her the money used to purchase the Webberville property. *See Worford*, 801 S.W.2d at 109 (in determining whether implied finding supported, we consider only most favorable evidence and disregard contradictory evidence).

---

[8] While Nicolas contested whether the gift was solely to Frances, the gift letter evinces no intent to gift the funds to Frances and Nicolas.

7

Nicolas contends that the subsequent transactions involving the Webberville property evidence that Frances transferred the property, in whole or part, to Nicolas by gift. He cites the fact that the Webberville property was purchased and titled only in his name; transferred to ATX, a company in which he and Frances were fifty percent owners; and transferred from ATX into the names of both Nicolas and Frances shortly before being sold. The proceeds from the sale of the property were then transferred into a bank account that was under Nicolas's sole control.

If a spouse purchases real estate during the marriage and takes title in the name of the other spouse, it gives rise to a rebuttable presumption that the property was gifted to the spouse identified as the title owner. *In re Marriage of Moncey*, 404 S.W.3d 701, 709 (Tex. App.—Texarkana 2013, no pet.); *Motley v. Motley*, 390 S.W.3d 689, 693 (Tex. App.—Dallas 2012, no pet.). However, this presumption is rebutted by proof (which may include parol evidence) that the spouse who provided the separate property funds did not intend to gift the property to the spouse on the title. *Pace v. Pace*, 160 S.W.3d 706, 712 (Tex. App.—Dallas 2005, pet. denied); *Petterson v. Petterson*, 595 S.W.2d 889, 892 (Tex. App.—Austin 1980, writ dism'd w.o.j.).

Frances testified that, at the time that the Webberville property was purchased, she was going through immigration proceedings and decided to put the property in Nicolas's name to avoid any appearance that she was attempting to immigrate illegally. She testified that it was never her intention to gift the Webberville property to Nicolas. This is sufficient evidence to allow the trial court to conclude that the community presumption was overcome.

8

Frances transferred the Webberville property to ATX in June of 2020. When property is conveyed to an entity, that property becomes the property of the entity and does not retain its character as either separate or community property. *In re Marriage of Nash*, 644 S.W.3d 683, 708 (Tex. App.—Texarkana 2022, no pet.). Therefore, Frances cannot trace her separate property ownership of the Webberville property through its transfer to ATX because, upon its transfer, she no longer held an ownership interest in the Webberville property. *See Mason v. Mason*, No. 03-17-00546-CV, 2019 Tex. App. LEXIS 3580, at *16 (Tex. App.—Austin May 3, 2019, no pet.) (mem. op.) ("when the funds were transferred from Jeff and Keri's community estate to 338 Industries, the funds lost their community character and became the property of the LLC"); *In re Marriage of Hudson*, No. 06-18-00011-CV, 2018 Tex. App. LEXIS 7929, at *8 (Tex. App.—Texarkana Sep. 28, 2018, no pet.) (mem. op.) (explaining that when property is conveyed to business entity, "such as a partnership or limited liability company, it becomes the property of the entity and loses its separate or community character"); *Lifshutz v. Lifshutz*, 199 S.W.3d 9, 27 (Tex. App.—San Antonio 2006, pet. denied) ("When an individual partner contributes property into a partnership, the partner loses individual interest in the property and, since the partnership itself is the new owner, the property can no longer be classified as separate or community."). This is true even if property that was separate when transferred into an entity is subsequently returned.

> [A] withdrawal from a partnership capital account is not a return of capital in the sense that it may be characterized as a mutation of a partner's separate property contribution to the partnership and thereby remain separate. Such characterization is contrary to the [Uniform Partnership Act] and implies that the partner retains an ownership interest in his capital contribution. He does not; the partnership entity becomes the owner, and the partner's contribution becomes partnership property which cannot be characterized as either separate or community property of the individual partners.

9

*Marshall v. Marshall,* 735 S.W.2d 587, 594 (Tex. App.—Dallas 1987, writ ref'd n.r.e.). Because Frances no longer owned the Webberville property after it was transferred to ATX, we must conclude that the trial court erred in ordering that the proceeds from the sale of the Webberville property were Frances's separate property.[9] We sustain Nicolas's first, second, fourth, fifth, sixth, and seventh issues.

### ISSUE THREE: CHARACTERIZATION OF PROPERTY

Nicolas challenges the trial court's characterization of $45,674.80 of a Fidelity Roth IRA as Frances's separate property. Nicolas contends that "there is a complete absence of any evidence or testimony whatsoever to support the trial court's award" of this amount as Frances's separate property. Our review of the record reveals that the amount of this award appears to come from a spreadsheet attached to the trial court's letter ruling dated August 2, 2024. A note on the spreadsheet entry identifying that $45,674.80 of a Fidelity Roth IRA is Frances's separate property indicates that this conclusion is "[b]ased on Robert Metz[10] tracing." However, nothing in Metz's reports or testimony traced any amount of money into a Fidelity Roth IRA. Further, after reviewing the entire record, no

---

[9] Frances contends that the distribution of the Webberville property was a partial liquidation and, as such, she retains her separate property interest in the property. To make this argument, Frances cites *LeGrand-Brock v. Brock*, 246 S.W.3d 318, 321 (Tex. App.—Beaumont 2008, pet. denied), as holding that when a spouse owns separate property stock in a dissolving business and receives distributions of liquidated assets, those distributions remain the stockholder's separate property. We conclude that *LeGrand* is distinguishable. First, Frances did not own stock in ATX. While stock that was purchased with separate property funds is separate property, *see Ridgell v. Ridgell*, 960 S.W.2d 144, 148 (Tex. App.—Corpus Christi 1997, no pet.), Frances's interest in ATX was set at fifty percent ownership by the company agreement. Second, even if Frances held stock in ATX, the distribution of the Webberville property was not a liquidation as it was not made in cancelation of Frances's interest in the business. *LeGrand*, 246 S.W.3d at 321 (cash dividends from separate stock are treated like income and are community property); *but see Pace v. Pace*, 160 S.W.3d 706, 715 (Tex. App.—Dallas 2005, pet. denied) (proceeds from the sale of separate property are separate property of the selling spouse).

[10] Robert Metz is Frances's expert. He provided a written report and an updated report, and testified during the hearing.

10

evidence was admitted that supports the trial court's determination that $45,674.80 of this Fidelity Roth IRA is Frances's separate property. We sustain Nicolas's third issue.

### ISSUE EIGHT: GAVIN'S INTEREST IN THE GUNTER PROPERTY

By his eighth issue, Nicolas contends that the trial court abused its discretion by awarding a fifty percent interest in the Gunter property to Gavin. Frances argues that Nicolas's actions and Gavin's payment created a purchase money resulting trust and, consequently, the trial court did not err in finding that Gavin owned fifty percent of the Gunter property. We conclude that the trial court did not abuse its discretion because a valid, enforceable oral contract supports the trial court's determination that Gavin owns half of the Gunter property.

Nicolas contends that any agreement between himself and Gavin is unenforceable because it violates the statute of frauds. The statute of frauds generally provides that a contract for the sale of real estate is not enforceable unless the contract is in writing and signed by the person to be charged with the contract or someone lawfully authorized to sign for him. TEX. BUS. & COMM. CODE ANN. § 26.01(a), (b)(4). However, the statute of frauds is an affirmative defense in a suit for breach of contract that renders the contract voidable and unenforceable. TEX. R. CIV. P. 94; *Enochs v. Brown*, 872 S.W.2d 312, 318 (Tex. App.—Austin 1994, no writ), *disapproved on other grounds*, *Roberts v. Williamson*, 111 S.W.3d 113, 120 (Tex. 2003). The party relying on the statute of frauds to avoid his agreement must plead it as an affirmative defense and bears the initial burden of establishing its applicability. TEX. R. CIV. P. 94; *Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 641 (Tex. 2013).

11

In the present case, Gavin intervened in April of 2024, claiming to own half of the Gunter property based on oral agreements reached with Nicolas. The record does not include any responsive pleading filed by Nicolas. Further, nothing in the record reflects that any claim that the parties' oral agreement violated the statute of frauds was tried by consent. *See* TEX. R. CIV. P. 67; *Nicol v. Gonzales*, 127 S.W.3d 390, 393 (Tex. App.—Dallas 2004, no pet.) (statute of frauds is waived if not affirmatively pleaded or tried by consent). Consequently, because Nicolas failed to properly raise the affirmative defense of the statute of frauds, we will not consider its applicability to invalidate the oral agreement reached by the parties.

The proponent of an oral contract must prove the existence and terms of any such agreement. *Turner v. NJN Cotton Co.*, 485 S.W.3d 513, 521 (Tex. App.—Eastland 2015, pet. denied). The elements of an oral contract are (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) meeting of the minds, and (4) each party's consent to the terms. *Id.*[11] We look to the communications and actions of the parties to determine whether a valid oral contract was proven. *Id.*

Here, Gavin testified that Nicolas and Frances approached him with an investment opportunity. The parties agreed that each would pay for half of the Gunter property and each would possess the rights to half of the property's rentals and eventual sale. Gavin wired $7,500 to the title company for the option and then wired $368,500 to Nicolas and Frances's bank account to pay for Gavin's portion of the cost of the Gunter property.[12]

---

[11] In a case involving a written contract, there is an additional element of execution and delivery of the contract with the intent that it be mutual and binding. *Id.*

[12] Nicolas and Frances financed the other half of the purchase price. It appears that transferring the property only to Nicolas and Frances was to facilitate this financing.

12

Many contemporaneous communications acknowledged that the deed for the property would initially be put in Nicolas and Frances's names only but that Gavin would be added after closing and that Gavin would own half of the Gunter property. While Gavin's name was never added to the deed, Nicolas acknowledged that he paid Gavin approximately $14,000 in rental profits from the Gunter property. Nicolas also acknowledged in his testimony that the agreement was that "there was some intention to include" Gavin. We conclude that there was sufficient evidence to establish that a binding oral agreement existed that supports the trial court's conclusion that Gavin owns half of the Gunter property.

Nicolas points to a "Gift Letter" signed by Gavin that states that $376,000 toward the purchase of the Gunter property is a gift to Nicolas and Frances and that no repayment is expected or implied either in cash or future services. However, Gavin testified that it was Nicolas and Frances who suggested that he sign a gift letter as a way to facilitate the purchase while ensuring that he would not be responsible for paying the mortgage. Further, contemporaneous communications evince that the only reason a gift letter was created was to facilitate the transaction and that all parties were aware that Gavin was providing half of the purchase price for the Gunter property and he would be half owner of it as well. We do not conclude that the presence of this gift letter precluded the trial court from considering evidence to the contrary and that the record reflects sufficient evidence of the parties' intents to overcome the assertions contained within this gift letter. *See Worford*, 801 S.W.2d at 109 (in determining whether implied finding supported, we consider only most favorable evidence and disregard contradictory evidence).

For the foregoing reasons, we overrule Nicolas's eighth issue.

13

## ISSUE NINE: JUST AND RIGHT DIVISION

By his final issue, Nicolas contends that the trial court abused its discretion by awarding a disproportionate share of the marital estate to Frances.

A trial court is tasked with ordering a division of the community estate "in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM. CODE ANN. § 7.001. A division of the marital estate need not be equal if an unequal division is equitable. *O'Carolan v. Hopper*, 414 S.W.3d 288, 311 (Tex. App.—Austin 2013, no pet.). The division of a marital estate is reviewed for abuse of discretion. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). We begin with the presumption that the trial court properly exercised its discretion in dividing a community estate, and the appellant bears the burden to show from the record that the division was so disproportionate and unfair as to constitute an abuse of discretion. *O'Carolan*, 414 S.W.3d at 311.

However, when a trial court mischaracterizes property as separate property, that property does not get divided as part of the community estate. *Kelly v. Kelly*, 634 S.W.3d 335, 349 (Tex. App.—Houston [1st Dist.] 2021, no pet.). If the mischaracterized property has such value that would necessarily affect the just and right division of the community estate, then the mischaracterization has caused sufficient harm that we must remand the entire community estate for a just and right division based on the proper characterization of the property. *Id.* However, "[i]f the mischaracterization of the property had only a *de minimis* effect on the just and right division, then we need not remand the case to the trial court." *Id.*

14

Here, the spreadsheet attached to the trial court's letter ruling indicates that it divided the community estate awarding $336,242.07 to Frances and $236,161.19 to Nicolas. This makes the total value of the divided community estate $572,403.26. This spreadsheet also indicates that a total of $338,749.63 in various accounts or businesses are the separate property of Frances. This determination is noted to be based on the tracing of Robert Metz. Metz traced these funds from the proceeds of the sale of the Webberville property. However, we have determined above that the Webberville property became community property when it was transferred from ATX as a distribution to Nicolas and Frances. When properly characterized, the trial court failed to divide thirty-seven percent of the actual community property. We conclude that this mischaracterization is sufficiently substantial as to require that we remand the entire community estate for a just and right division of the properly characterized community estate. *Id.* We sustain Nicolas's ninth issue.

## CONCLUSION

We affirm that portion of the divorce decree that dissolves the marriage of the parties and finds that Gavin is entitled to fifty percent of the proceeds from the sale of the Gunter property. However, we reverse that portion of the divorce decree that divides the parties' property and remand the case to the trial court to exercise its discretion to divide the parties' marital estate in accordance with this opinion.

Judy C. Parker
Justice

15