Robert M. NICOL, Appellant

v.

Antoinette GONZALES, Appellee.

No. 05–02–01548–CV.

Court of Appeals of Texas, Dallas.

Feb. 6, 2004.

Rehearing Overruled March 10, 2004.

Mark D. Perdue, Storm & Hemingway, LLP, Maurice D. Healy, The Zisman Law Firm, P.C., Dallas, for appellant.

Robert Yaquinto, Jr., Sherman & Yaquinto, Dallas, for appellee.

Before Justices MOSELEY, O'NEILL, and LAGARDE.[1]

## OPINION

Opinion by Justice MOSELEY.

This case involves a dispute between the owners of adjoining property as to the meaning of a document executed and filed in 1983 entitled "Easement."[2] In two issues, Robert M. Nicol appeals an adverse judgment in favor of Antoinette Gonzales in her suit to enforce her rights under a document titled "Easement." For the reasons below, we resolve Nicol's two issues against him and affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Nicol owns Lot 25, Block 50/3305 of the Winnetka Heights Addition in Dallas. Gonzales owns the adjoining Lot 24 in the same block. The south boundary of Nicol's lot is the north boundary of Gonzales's lot. In 1983, Nicol and Gonzales's predecessor in title, Dale Conner Ulrey, signed and filed the document. It states that, in about 1920, a garage was constructed on Lot 24, which encroached onto the adjacent Lot 25. The document also recites that, since about 1920, Ulrey and her predecessors have used a driveway partially on Lot 25 for ingress and egress to and from the garage. In order to settle the controversy and conflicting claims from those encroachments on Lot 25, the document purported to convey to Ulrey and her heirs, successors, and assigns an easement on that portion of Lot 25 presently being used as a driveway. The record shows that, at the time the document was signed, a building used as a toolshed was also located on the rear part of Lot 24. Both the garage and the toolshed remained until 1998, when the garage was razed, leaving the toolshed. In 2000, Nicol constructed a fence and gate on the driveway on Lot 25, cutting off Gonzales's access to the rear portion of her lot.

Gonzales sued Nicol "for the enforcement of her easement." She requested that the trial court order Nicol to remove the fence, gate, and any other obstructions to the driveway. She also requested $10,000 in damages, attorney's fees, costs, and interest. In his first amended answer, Nicol entered a general denial and pleaded "specific matters," including that the 1983 document, when read properly, says that the easement exists until either the garage is removed or Gonzales ceases to use the easement for the purposes of ingress or egress to the garage, whether used as a garage or as an outbuilding.

Trial was to the court. The judgment found that the easement for the use of Nicol's lot for a part of Gonzales's garage was extinguished. (There is no dispute as to the use of Lot 25 for Gonzales's garage.) The judgment further found that the easement for the use of the driveway that runs along the southern boundary of Nicol's lot was not extinguished or abandoned and remained in full force "for ingress and egress to the rear portion" of Lot 24. The judgment ordered Nicol to "remove any

---

1. The Honorable Sue Lagarde, Justice, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

2. To minimize confusion, this document is referred to as "the document," rather than by its title.

impediments to the use of the easement as set out above." The judgment also adjudged costs of court against Nicol and provided that "[a]ll writs and processes for the enforcement and collection of this judgment or the costs of court may issue as necessary." All other relief was denied. The trial court also made findings of fact and conclusions of law in support of its judgment. The trial court rejected Nicol's request for additional findings of fact and conclusions of law. This appeal followed.

### EXISTENCE OF AN EASEMENT

■ In his first issue, Nicol contends there is no proof of an easement. Specifically, Nicol contends that the document does not show what part of Lot 25 was being used as a driveway, and neither the findings of fact nor the judgment describes the easement that the trial court found to be enforceable. Nicol argues that the description of the "easement" in the document is insufficient to satisfy the Statute of Frauds. *See Pick v. Bartel*, 659 S.W.2d 636, 637 (Tex.1983).[3]

■ The Statute of Frauds is a matter in avoidance that must be affirmatively pled. TEX.R. CIV. P. 94; *Cadle Co. v. Castle*, 913 S.W.2d 627, 631 (Tex.App.-Dallas 1995, writ denied). Nicol did not plead the affirmative defense of Statute of Frauds. Further, the record does not show that the affirmative defense of Statute of Frauds was tried by consent. *See* TEX.R. CIV. P. 67; *Stephanz v. Laird*, 846 S.W.2d 895, 901 (Tex.App.-Houston [1st Dist.] 1993, writ denied). Thus, Nicol

waived his affirmative defense of Statute of Frauds. We resolve Nicol's first issue against him.

### TERMINATION OF DRIVEWAY EASEMENT

Nicol's second issue deals with the duration of the easements. In the context of this issue, we review the language of the document, the relevant portion of which is set forth below. (The italics and underlining are added to facilitate discussion of Nicol's arguments.)

ROBERT M. NICOL ... has granted, ... and by these presents does grant, ... to [Grantee (Gonzales's predecessor) ] ... an easement in, to, upon and over all that portion of Lot 25 ... on which the garage of the said Grantee is presently situated, and that portion of said Lot 25 which is presently being used by Grantee as a driveway for ingress and egress to and from said garage, ...; it being distinctly understood that the said easement is for the sole purpose of the use of Grantee ... of (sic) the said garage and for ingress and egress. *It is expressly agreed by the parties hereto that the easement thus granted as to the garage shall continue so long as the present garage is located in its present location, and at such time as said garage ceases to be located on such portion of Lot 25, such easement as to the garage will cease and come to an end.* It is further agreed by the parties hereto that the easement thus granted for a driveway for ingress and egress shall continue so long as same is used by

---

**3.** The Statute of Frauds requires that a contract for the sale of real estate be in writing and signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for the person. TEX. BUS. & COM.CODE ANN. § 26.01 (Vernon 2002). The Statute of Conveyances likewise dictates that a conveyance of real estate be in writing and subscribed to and delivered by the con-

veyor. TEX PROP.CODE ANN. § 5.021 (Vernon 2004). Because the test for sufficiency of a writing is essentially the same in both the Statute of Frauds and the Statute of Conveyances, we refer generally to the Statute of Frauds. *See W. Beach Marina, Ltd. v. Erdeljac*, 94 S.W.3d 248, 264 & n. 10 (Tex.App.-Austin 2002, no pet.).

Grantee, her heirs & her Successors and Assigns as their interests may appear, for ingress and egress to a garage or out-building situated on the rear portion of said Lot 24, after which it will cease and come to an end.

(Italics and underline added.)

According to Nicol, the two clauses after the granting clause govern the duration of the easement. Nicol asserts the first of these clauses, italicized above, addresses the garage easement and requires that any new or reconstructed garage be placed entirely on Lot 24. Gonzales does not contest this assertion. The existing garage was razed, and no longer encroaches on Nicol's lot. Gonzales has not rebuilt the garage (on her lot or otherwise), and did not cross-appeal to assert she is still entitled to maintain a garage on Nicol's lot. However, Nicol's second issue attacks the trial court's findings as to the duration of the driveway easement.

In his second issue, Nicol contends that there was no proof that the driveway easement survived the destruction of the garage. Nicol asserts that the second clause, underlined above, means that the easement was for the existing driveway that was being used for ingress and egress to the existing garage, and thus the driveway easement expressly terminated when the garage was destroyed. Pertinent to this issue, the trial court found and concluded that "[t]he language of the easement is clear and the meaning can be ascertained from the document" and "[t]he easement granting use of the driveway located on [Nicol's lot] ... is enforceable and the right to use of the easement should be restored."

**1. Applicable Law and Standard of Review**

When the interpretation of a contract is in issue, the trial court must first determine whether the provisions in question are ambiguous. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex.1983). The question of whether a contract is ambiguous is a question of law for the trial court's determination. *Id.* A contract is ambiguous if it is reasonably susceptible to more than one meaning. *Id.* at 393. Neither party argues that the terms of the 1983 document are ambiguous; they simply disagree over its construction and interpretation. A disagreement over the meaning of a contract provision does not render the provision ambiguous. *Pegasus Energy Group, Inc. v. Cheyenne Petroleum Co.*, 3 S.W.3d 112, 120 (Tex.App.-Corpus Christi 1999, pet. denied).

When the parties disagree over the meaning of an unambiguous contract, the court must determine the parties' intent by examining and considering the entire writing in an effort to give effect to the parties' intentions as expressed in the contract. *Coker*, 650 S.W.2d at 393; *Pegasus Energy Group, Inc.*, 3 S.W.3d at 121. The parties' intent must be taken from the agreement itself, not from the parties' present interpretation, and the agreement must be enforced as it is written. *Pegasus Energy Group, Inc.*, 3 S.W.3d at 121.

Legal conclusions of the trial court are always reviewable, and the appellate court is not obligated to give any particular deference to those conclusions. *Id.* We review questions of law de novo. *State v. Heal*, 917 S.W.2d 6, 9 (Tex.1996). As the final arbiter of the law, we have the power and the duty to evaluate independently the legal determinations of the trial court. *Pegasus Energy Group, Inc.*, 3 S.W.3d at 121. A trial court's legal conclusions will be upheld on appeal unless they are erroneous as a matter of law. *Id.*

**2. Discussion**

■ In support of his argument that the driveway easement expressly terminated when the garage was destroyed, Nicol asserts that the phrase "a garage or out-building" in the underlined clause refers to a single structure, namely: the garage that existed at the time the document was executed. Gonzales asserts that the driveway easement survives the destruction of the then-existing garage. She argues the underlined language unambiguously provides that the garage easement survives so long as the driveway is used for ingress and egress to "a garage or out-building situated on the rear portion of said Lot 24."

■ The document uses the terms "said garage" and "the garage" in the granting clause, but uses a different phrase, "a garage or out-building," in the underlined clause. When there is no ambiguity, it is the court's duty to give the words used their plain meaning. *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984). An "outbuilding" is defined as "something used in connection with a main building[;] [a] small building appurtenant to a main building, and generally separated from it; *e.g.* outhouse; storage shed." BLACK'S LAW DICTIONARY 1101 (6th ed.1990). Thus, the meaning of an "out-building" could include a garage, but, if that is the case here, the words "or out-building" are without any meaning. Construing "a garage or out-building" to refer to two structures gives meaning to each word. *See Luckel v. White*, 819 S.W.2d 459, 462 (Tex. 1991) (noting parties to instrument "intend every clause to have some effect and in some measure to evidence their agreement"). Thus, we reject Nicol's argument that the phrase "a garage or out-building," as used in this clause, necessarily refers to the one and the same structure.

■ Nicol argues that the doctrine of ejusdem generis applies. The doctrine of ejusdem generis provides that when words of a general nature are used in connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation. *Hilco Elec. Co-op., Inc. v. Midlothian Butane Gas Co.*, 111 S.W.3d 75, 81 (Tex.2003). Nicol argues that the use of the specific term—"garage"—followed by a more general term—"out-building"—limits the meaning of the term "out-building" to something in the nature of a garage. However, this doctrine applies only when the contract is ambiguous. *Hussong v. Schwan's Sales Enters., Inc.*, 896 S.W.2d 320, 325 (Tex.App.-Houston [1st Dist.] 1995, no writ). It does not apply when the parties' intent is apparent. *Id.* Because we have already concluded that the provisions of the document are not ambiguous with respect to the duration of the driveway easement, we need not apply ejusdem generis to this case. *See id.*

Nicol next argues the granting clause provided for an easement for the existing driveway for ingress and egress to a garage, but the trial court's interpretation of "a garage or out-building" to mean any building in Gonzales's backyard, whether it is connected to the driveway and whether there is a need for ingress and egress in the same way as for a garage, expands the easement beyond the parties' intent. Thus, according to Nicol, the trial court's interpretation of "a garage or out-building" in the underlined (duration) clause creates a conflict with the granting clause.

However, if the granting clause is construed to grant to Ulrey and her successors the use of the driveway for ingress and egress to the garage or the other outbuilding, i.e., the toolshed that was (and is) located on the rear portion of Lot 24, there is no conflict between the two clauses. Moreover, the phrase "ingress and

egress" is not defined specifically in the document to refer to automobiles. *See Coker*, 650 S.W.2d at 393 (noting that, to ascertain true intentions of parties as expressed in instrument, "courts should examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless") (emphasis in original). Thus, we cannot conclude that there is a conflict between the granting clause and the duration clause as to the use of the driveway easement for ingress and egress to the toolshed. Having rejected Nicol's arguments as to the duration of the driveway easement, we resolve Nicol's second issue against him.

## CONCLUSION

Having resolved Nicol's two issues against him, we affirm the trial court's judgment.