**REVERSE, RENDER, and REMAND; and Opinion Filed August 20, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

---

### No. 05-10-01614-CV

---

## W. DAVID HOLLIDAY, Appellant

### V.

## GREG WEAVER AND WENDY WEAVER, Appellees

---

**On Appeal from the County Court at Law No. 3**
**Dallas County, Texas**
**Trial Court Cause No. CC-07-07953-C**

---

## OPINION

Before Justices Lang-Miers, Myers, and Richter[1]
Opinion by Justice Lang-Miers

Wendy Weaver hired attorney W. David Holliday to pursue claims relating to a car accident. Wendy and her husband, Greg, later sued Holliday alleging, among other things, that he settled an insurance claim without the Weavers' knowledge or consent and converted the money for his personal use. After a three-day nonjury trial, the trial court found in favor of the Weavers on their claims for breach of fiduciary duty, professional negligence, fraud, and violation of the Texas Deceptive Trade Practices Act (DTPA). The Weavers elected to recover on the DTPA claim, and the trial court rendered judgment against Holliday for damages,

---

[1] The Honorable Martin E. Richter, Retired Justice, Fifth District Court of Appeals at Dallas, sitting by assignment.

1

attorney's fees, prejudgment interest, and court costs. We reverse the trial court's judgment in favor of the Weavers on their DTPA claim, render judgment for the Weavers on their breach of fiduciary duty claim, and remand this case to the trial court for further proceedings consistent with this opinion.

## BACKGROUND

### The Undisputed Facts

Wendy was injured in a two-vehicle car accident in April 2001 when she was eight months pregnant with the Weavers' son, Cody. Wendy's medical bills attributable to the accident totaled approximately $19,000. The other car involved in the accident was rented from Enterprise Leasing Company of DFW by a woman named Janice Young. At the time of the accident, Young's son, Nolan Hill, was driving the rented car and Young was a passenger.

Holliday was a friend of Wendy's father. Wendy hired Holliday a couple of weeks after the accident to assert claims on her behalf for injuries she sustained in the accident. Under Wendy's fee agreement with Holliday, she agreed to pay him attorney's fees totaling 33.33% "of any recovery by settlement before filing suit," or 40% "of any recovery by settlement after filing suit." Wendy and Holliday also agreed that no settlement or other disposition of any claim would be made without Wendy's approval.

Holliday obtained $2,500 in first-party personal injury protection (PIP) coverage for Wendy from State Farm, the Weavers' insurance company, and forwarded that check to the Weavers. He also filed a lawsuit against Young, Hill, and Enterprise. Enterprise moved for summary judgment, and Holliday signed an agreed order granting summary judgment in favor of Enterprise. Holliday nonsuited Young, and the trial court entered a default judgment against Hill for $679,000. Hill later filed for bankruptcy, and the judgment against him was discharged in the bankruptcy proceeding.

2

Without the Weavers' knowledge, Holliday sent a demand letter to the Weavers' insurance company for uninsured motorist coverage in the amount of policy limits of $20,000 each for Wendy and Cody, or a total demand of $40,000. Two days later, State Farm issued a check for $20,000 made payable to Wendy, Greg, and Holliday. A few days after receiving the check from State Farm, Holliday or his wife (who was also his legal assistant) signed the Weavers' names to the back of the check and deposited it in Holliday's client trust account. Holliday wrote himself a check for $8,833.33, representing 40% of the $20,000 payment under the Weavers' uninsured motorist policy ($8,000) and 33.33% of the $2,500 PIP payment ($833.33). Holliday kept the remainder of the settlement money in his trust account, and there was a period of time when the balance in Holliday's client trust account fell below the amount of the remainder. The $20,000 from State Farm is at the center of the Weavers' claims against Holliday.

**Testimony About the $20,000 Payment From State Farm**

Wendy testified that communications with Holliday broke down, and in January 2005 she called State Farm to inquire about the status of any claims relating to her car accident. She learned that State Farm had mailed a check to Holliday in June 2004 for $20,000 made payable to Holliday and the Weavers and that the check had been endorsed and cashed two days later. The Weavers discharged Holliday and demanded an accounting from him, at which time he apparently made payments to certain medical providers, including multiple providers whose bills had already been paid. Holliday provided an accounting to the Weavers and wrote them a check for the amount of the State Farm settlement minus his fees, expenses, and payments to the medical providers.

3

According to the Weavers, Holliday did not tell them about the payment and they learned about it for the first time when Wendy called State Farm directly. According to Holliday, he obtained the Weavers' consent to accept the $20,000 payment and sign their names on it before he signed and deposited the check. He also testified that he met with the Weavers at his office in August 2004, and during that meeting the Weavers decided to let Holliday keep their portion of the $20,000 to fund another lawsuit against Enterprise.

**The Trial Court's Findings and Judgment**

Following a nonjury trial, the trial court issued 40 findings of fact and 10 conclusions of law, including the following:

- Holliday breached his fiduciary duty to the Weavers and the appropriate remedy was "complete disgorgement of Holliday's fee including certain expenses, which total $10,786.84";

- Holliday committed professional negligence and fraud, and each of those claims resulted in $10,786.84 in damages to the Weavers;

- Holliday violated the DTPA and the Weavers suffered actual damages of $10,786.84; and

- Holliday knowingly engaged in unconscionable conduct.

The Weavers elected to recover on their DTPA claims, and the trial court awarded $10,786.84 in additional damages under the DTPA as a result of Holliday's unconscionable conduct. The total amount of damages awarded in the judgment was $21,573.68, plus $30,000 in attorney's fees through trial, and up to $23,500 in conditional appellate attorney's fees.

ISSUES ON APPEAL

Holliday raised 32 issues in his pro se amended appellant's brief and generally challenged the sufficiency of the evidence to support most of the trial court's findings of fact. He also challenged every aspect of the trial court's judgment, including the award of attorney's fees. However, Holliday hired appellate counsel to prepare and file his reply brief and to present oral

4

argument. In his reply brief, Holliday relinquished his challenge to the sufficiency of the evidence to support liability findings on the non-negligence claims, and he narrowed his issues on appeal to four: (1) there is no evidence to support the DTPA or fraud damages; (2) there is legally insufficient evidence to support the negligence judgment because there is no evidence of collectability; (3) the trial court impermissibly ordered disgorgement of amounts paid to medical providers; and (4) the DTPA and fraud claims are impermissibly fractured claims for professional negligence.

## STANDARD OF REVIEW

Findings of fact made after a bench trial have the same force and effect as jury findings. *Jamison v. Allen*, 377 S.W.3d 819, 823 (Tex. App.—Dallas 2012, no pet.). The applicable standard of review is also the same as that applied in the review of jury findings. *Id.*; *see IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 445 (Tex. 1997). A party appealing from a nonjury trial must complain of specific findings and conclusions of the trial court because a general complaint against the judgment does not present a justiciable question. *IKB*, 938 S.W.2d at 445.

In reviewing the legal sufficiency of the evidence to support a trial court's finding, we must determine whether the evidence would enable reasonable and fair-minded people to reach the finding under review. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We consider the evidence in the light most favorable to the court's finding and indulge every reasonable inference that supports it. *Id.* at 822. We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* When there is a complete absence of a vital fact, or the evidence of a vital fact is no more than a scintilla, the evidence is legally insufficient. *Id.* at 810. In conducting our review, we must bear

5

in mind that the factfinder is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Id.* at 819.

## DISCUSSION

In issue one, Holliday argues that the evidence is legally insufficient to support the award of $10,786.84 in damages under the DTPA because there is no evidence of actual damages. More specifically, he argues that the damages award was really disgorgement of money from the State Farm settlement that was not paid to the Weavers, and that the Weavers were not entitled to this relief because they did not plead or seek equitable relief under the DTPA.[2] He also contends that there is no evidence the DTPA violations were a producing cause of damages to the Weavers. In response, the Weavers argue that the award of damages under the DTPA was proper because Holliday's fee and the payment of the medical bills "flow directly and naturally from [his] wrongful acts."

A consumer may recover "economic damages" under the DTPA. TEX. BUS. & COM. CODE ANN. §§ 17.50(b)(1), 17.45(11) (West 2011). Courts have construed "economic damages" synonymously with "actual damages" under the common law. *See Beaumont v. Basham*, 205 S.W.3d 608, 619 & n.2 (Tex. App.—Waco 2006, pet. denied). To recover under the DTPA, a consumer must prove that the defendant's wrongful conduct was the producing cause, or cause in fact, of the consumer's damages. TEX. BUS. & COM. CODE ANN. § 17.50(a); *Latham v. Castillo*, 972 S.W.2d 66, 69 (Tex. 1998). "Producing cause is 'a substantial factor which brings about the injury and without which the injury would not have occurred.'" *Vuong v. Luk*, No. 01-11-00178-

---

[2] Citing Texas Rule of Appellate Procedure 38, the Weavers also argue that Holliday waived this issue due to inadequate briefing in his amended pro se brief. We disagree. Holliday cited the standard for legal sufficiency and argued that there is no evidence to support the trial court's finding of $10,786.84 in actual damages. As a result, we will address the merits of this issue.

CV, 2013 WL 174560, at *7 (Tex. App.—Houston [1st Dist.] Jan. 17, 2013) (mem. op.) (quoting *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 481 (Tex. 1995)).

In this case, the damages awarded for the DTPA violations are the same as the damages awarded for the Weavers' other claims—essentially, the attorney's fees received by Holliday and certain medical payments deducted from the State Farm settlement before the remainder was paid to the Weavers. With respect to Holliday's acceptance of the payments from State Farm, the court found that Holliday settled the Weavers' claim, paid himself, and kept the remainder of the settlement proceeds for a period of time, all without the Weavers' knowledge. The court also found that Holliday or his wife forged the Weavers' signatures on the back of the check.

The court found that Holliday acted unconscionably, but the court did not find that the Weavers were entitled to more money from State Farm than Holliday recovered, or that Holliday's acceptance of those payments or his forging of the Weavers' signatures precluded the Weavers from receiving other money owed to them. And although the trial court found that Holliday used the Weavers' money for his personal purposes without their knowledge or consent, the Weavers acknowledged that Holliday ultimately paid them $7,314 from those funds.

Additionally, it is undisputed that Wendy had a fee agreement that entitled Holliday to 33.33% of any recovery before suit was filed and 40% of any recovery after suit was filed. Although the parties disagreed about whether Holliday was entitled to the higher percentage, there is no evidence that his acceptance of the settlement payments from State Farm, or his $8,833.33 in attorney's fees, constituted a pecuniary loss to the Weavers that was caused by Holliday's DTPA violations as opposed to the other claimed wrongful conduct. *See Doe*, 907 S.W.2d at 481 (stating DTPA plaintiff has to show defendant's DTPA violation "was the cause in fact of the plaintiff's injury" or an "unbroken causal connection" between DTPA conduct and

alleged injuries); *James V. Mazuca & Assoc. v. Schumann*, 82 S.W.3d 90, 95 (Tex. App.—San Antonio 2002, pet. denied) (same) (citing *Doe*, 907 S.W.2d at 481); *cf. DeBakey v. Staggs*, 605 S.W.2d 631, 633 (Tex. Civ. App.—Houston [1st Dist.] 1980), *writ ref'd n.r.e.*, 612 S.W.2d 924 (Tex. 1981) (concluding plaintiff proved damages in the amount of $170 in additional attorney's fees caused by defendant's failure to complete name change request as agreed).

With respect to the trial court's finding that Holliday used $1,953.51 to pay Wendy's medical bills that the Weavers claimed had already been paid, we likewise conclude that this amount does not constitute a pecuniary loss incurred as the result of Holliday's DTPA violations as opposed to other claimed wrongful conduct.

Consequently, we conclude that the evidence is legally insufficient to support the award of damages under the DTPA because there is no evidence that the DTPA violations were a producing cause of the Weavers' claimed pecuniary loss. *See City of Keller*, 168 S.W.3d at 810 (evidence is legally insufficient if record demonstrates complete absence of vital fact or evidence to prove vital fact is no more than a scintilla). We resolve issue one in Holliday's favor.

### Remaining Issues

Because of our disposition of issue one, we do not need to consider issue four in which Holliday contended that the Weavers' DTPA claim was a fractured professional negligence claim. In his remaining issues, Holliday does not challenge the judgment against him for $10,786.84 on the Weavers' claim for breach of fiduciary duty. As his counsel explained during oral argument, Holliday's position is that this Court should reverse the judgment on the DTPA claim, "render judgment on breach of fiduciary duty for $10,786.84, and be done."[3]

---

[3] In his reply brief Holliday argued that if we render judgment on the breach of fiduciary duty claim we should give the Weavers an option of accepting a remittitur of $1,953.31 because the trial court improperly extended the remedy of fee forfeiture to sums paid to third-party providers. During oral argument Holliday took the position that we should "render judgment on breach of fiduciary duty for $10,786.84," which includes the $1,953.31. As a result, we will not address his remittitur argument.

Consequently, we do not consider Holliday's other issues because, if he did not prevail, those claims would not provide the Weavers any greater relief than the relief available on their claim for breach of fiduciary duty. *See Boyce Iron Works, Inc. v. Sw. Bell. Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988) ("When a party tries a case on alternative theories of recovery and a jury returns favorable findings on two or more theories, the party has a right to a judgment on the theory entitling him to the greatest or most favorable relief.").

**DISPOSITION**

We reverse the trial court's judgment in favor of the Weavers on their claim for violations of the DTPA, which includes the award of actual damages, additional damages, attorney's fees, interest, and court costs. *See Gulf States Util. v. Low*, 79 S.W.3d 561, 567 (Tex. 2002) ("Without any actual-damages recovery [in a DTPA claim], a party is not entitled to an attorney's fees recovery."). We render judgment for the Weavers in the amount of $10,786.84 on their claim for breach of fiduciary duty. We remand this case to the trial court for the calculation of court costs and interest.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

101614F.P05

9

# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

W. DAVID HOLLIDAY, Appellant

No. 05-10-01614-CV     V.

GREG WEAVER AND WENDY
WEAVER, Appellees

On Appeal from the County Court at Law
No. 3, Dallas County, Texas
Trial Court Cause No. CC-07-07953-C.

Opinion delivered by Justice Lang-Miers,
Justices Myers and Richter participating.

In accordance with this Court's opinion of this date, the judgment of the trial court in favor of appellees Greg Weaver and Wendy Weaver on their claim against appellant W. David Holliday for violations of the Texas Deceptive Trade Practices Act is **REVERSED**. We **RENDER** judgment in the amount of $10,786.84 in favor of appellees Greg Weaver and Wendy Weaver against appellant W. David Holliday on the Weavers' claim for breach of fiduciary duty. We **REMAND** this cause to the trial court for the calculation of court costs and interest.

It is **ORDERED** that appellees Greg Weaver and Wendy Weaver recover their costs of this appeal from appellant W. David Holliday.

Judgment entered this 20th day of August, 2013.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

10