ACCEPTED
05-14-01312-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
6/5/2018 10:20 PM
LISA MATZ
CLERK

## CASE NO. 05-14-01312-CV

**IN THE FIFTH DISTRICT COURT
OF APPEALS AT DALLAS, TEXAS**

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
6/5/2018 10:20:44 PM
LISA MATZ
Clerk

**CHAN IL PAK,**
*Appellant/Cross-Appellee.*

**v.**

**AD VILLARAI, LLC,
THE ASHLEY NICOLE WILLIAMS TRUST,**
*Appellees/Cross-Appellants,*

**VILLAS ON RAIFORD, LLC, AND
VILLAS ON RAIFORD CARROLLTON SENIOR HOUSING, LLC,**
*Appelles.*

**On Appeal from the 101st Judicial District Court,
Dallas County, Texas,
Honorable Judge Marty Lowy and Honorable Judge Staci Williams presiding,
Trial Cause No. DC-13-06030**

## APPELLANT'S MOTION FOR REHEARING

# IDENTITY OF PARTIES AND COUNSEL

**Appellant/Cross-Appellee/Defendant:**
Chan Il Pak


**Appellees/Cross-Appellants/Plaintiffs:**
AD Villarai, LLC
The Ashley Nicole Williams Trust


**Appellees/Plaintiffs:**
Villas on Raiford, LLC
Villas on Raiford Carrollton Senior Housing, LLC

**Appellate Counsel for Cross-Appellants/Appellees/Plaintiffs:**
William F. LePage, Esq.
Stutzman, Bromberg, Esserman & Plifka, P.C.
2323 Bryan Street, Suite 2200
Dallas, Texas 75201

# TABLE OF CONTENTS

Identity of Parties and Counsel ...................................................................................1

Table of Contents.........................................................................................................2

Index of Authorities ....................................................................................................4

    A. Applicable Contract Law …………………………………………………….7

    B. Finding of Facts and Conclusions of Law………………………………..10

    C. Written Consent……………………………………………………………...12

    D. Requirements of the Villas-Manger Company Agreement………………13

    E. Section 5.11 of the Villas-Manager Company Agreement………………14

    F. Last Sentence of Section 5.11……………………………………………19

    G. BOC 101.359………………………………………………………………...20

    H. Written Consent and BOC 101.359 do not substitute for the requirements of
       Villas-Manger Company Agreement…………………………………….…22

    I. Appellees could have called a meeting……………………………………..24

    J. If the Written Consent is not valid then Chan Pak cannot removed from
       Villas-CSH…………………………………………………………………...24

    K. Villas-CSH damages should be vacated……………………………...…25

    L. No threat of public harm……………………………………………………26

Prayer .......................................................................................................................28

Signature Block .......................................................................................................28

Certificate of Service ......................................................................29

Certificate of Compliance with Rule 9.4 ............................................29

# INDEX OF AUTHORITIES

**Texas Supreme Court**

*American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154 (Tex. 2003)……….9

*BMC Software Belguim, N.V. v. Marchand*, 83 S.W.3d 789 (Tex. 2002)…........11

*City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)……………………..10

*Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936 (Tex. 1984)………………………7

*SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840 (Tex. 2005)……………………. 8

*Tawes v. Barnes*, 340 S.W.3d 419 (Tex. 2011)…………………………………8

**Texas Appeals Court**

*Cross Timbers Oil Co. v. Exxon Corp.*, 22 S.W.3d 24 (Tex. App.—Amarillo 2000, no pet.)………………………………………………………………...…9

*Dedier v. Grossman*, 454 S.W.2d 231 (Tex. App.—Dallas 1970, writ ref'd n.r.e.)………………………………………………………………..9

*Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280 (Tex. App.—Dallas 2009, no pet.)…7

*First Trust Corp. TTE FBO v. Edwards*, 172 S.W.3d 230 (Tex. App.—Dallas 2005, pet. denied)……………………………………………………….8

*Holliday v. Weaver*, 410 S.W.3d 439 (Tex. App.—Dallas 2013, pet. filed)……10

In re Moers, 104 S.W.3d 609 (Tex. App.—Houston [1st Dist.] 2003, no pet.)….11

*LG Ins. Mgmt. Servs., L.P. v. Leick*, 378 S.W.3d 632 (Tex. App.—Dallas 2012, no pet.)…………………………………………………………………………..9, 10

*Natural Gas Clearinghouse v. Midgard Energy Co.*, 113 S.W.3d 400 (Tex. App.—Amarillo 2003, pet. denied)………………………………………………….10

*Nexstar Broadcasting v. Fidelity Comm.*, 376 S.W.3d 377 (Tex. App.—Dallas 2012, no pet.)……………………………………………………………….…7

*Nicol v. Gonzales*, 127 S.W.3d 390 (Tex. App.—Dallas 2004, no pet.)…………8

*Pulley v. Milberger*, 198 S.W.3d 418 (Tex. App.—Dallas 2006, pet. denied)…10

*Templeton v. Dreiss*, 961 S.W.2d 645 (Tex. App.—San Antonio 1998, pet. denied)……………………………………………………………………….11

**Texas Statutes**
TEX. BUS. ORGS. CODE § 101.359 ................................................6, 12, 20-23

This Panel's opinion expands the power of Texas Business Organization Code Section 101.359 ("BOC 101.359") to actions that are improperly done. The Trial Court and this Court allowed Appellees to enforce the contract against Chan Pak without following the Villas on Raiford ("Villas-Manager") Company Agreement. Appellees executed a Written Consent of Majority of Members and Managers Excluding the Interest held by Chan Pak ("Written Consent") to remove Chan Pak as a co-manager, member, and officer of Villas-Manager on September 22, 2013. The Written Consent did not follow the language in the Villas-Manager Company Agreement. If the BOC 101.359 is found to not apply to the facts of DC-13-06030 or if the Written Consent is invalid from not following the Villas-Manager Company Agreement, the Trial Court's Modified Final Judgment and/or this Court's Judgment should be overruled regarding Chan Pak status as a co-manager of Villas-Manager, member of Villas-Manager, and damages awarded to Villas Carrollton Senior Housing, LLC ("Villas-CSH"). This Court found that Chan Pak was removed from Villas-CSH because Chan Pak could not block his member removal from Villas-CSH because the Written Consent removed him as a member and a co-manager of Villas-Manager.[1] If Written Consent is not effective, Chan Pak remains a member and co-manager of Villas-Manager. If the Written Consent is not effective, Chan Pak member interest removal from Villas-CSH

---

[1] Memorandum Opinion on Remand (No. 05-14-01312-CV), Page 18

6

failed because Appellees did not get Chan Pak's approval as a member and/or as a co-manager in Villas-Manager. Further, if Chan Pak was a member of Villas-CSH, Villas-CSH could not sue Chan Pak without Chan Pak's member approval. If Chan Pak is found to be a member of Villas-CSH, the damages awarded to Villas-CSH from Chan Pak should be vacated.

## A. Applicable Contract Law

The Trial Court and this Court enforced the Villas-Manager and Villas-CSH Company Agreement against Chan Pak. In order to do so, Appellees must have properly followed the Company Agreement and the requirements needed to be fulfilled.

Where a contract is unambiguous, the language of the contract alone expresses the parties' intent, and it must be enforced as written.[2] Likewise, one party's unilateral *misinterpretation* of the contract does not render it ambiguous,[3] nor does a lack of clarity or even in-artful drafting does not necessarily make an agreement ambiguous.[4] Indeed, in the absence of an allegation of ambiguity as to contract language, the instrument alone will be deemed to express the intent of the

---

[2] *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984).

[3] *Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 300 (Tex. App.—Dallas 2009, no pet.).

[4] *Nexstar Broadcasting v. Fidelity Comm.*, 376 S.W.3d 377, 382 (Tex. App.—Dallas 2012, no pet.).

parties.[5] Appellees never made an argument about ambiguous language in the contract. Any review of the company agreement should be interpreted with the plain meaning of the words or the defined meanings of the words in the company agreements. This Court must interpret the Company Agreement as written, bargained-for, and agreed upon by the members of Villas-CSH and Villas-Manager.

The primary concern of a court interpreting a contract is to ascertain and to give effect to the intentions of the parties as expressed in the contract.[6] What the parties objectively expressed in the contract instrument governs the meaning of the contract, not subsequently claimed or unexpressed opinions about what was intended.[7] The intent of a contract is not changed merely because the circumstances do not precisely match the scenarios anticipated by the contract.[8]

Furthermore, this Court enforces a contract—like the two Company Agreements—as the parties have made it, without regard to whether they

---

[5]     *Nicol v. Gonzales*, 127 S.W.3d 390, 394 (Tex. App.—Dallas 2004, no pet.).

[6]     *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011); *First Trust Corp. TTE FBO v. Edwards*, 172 S.W.3d 230, 233-34 (Tex.App.—Dallas 2005, pet. denied).

[7]     *Nicol v. Gonzales*, 127 S.W.3d 390, 394 (Tex. App.—Dallas 2004, no pet.). Although there is no evidence in the Record that, prior to executing the two Company Agreements, there was any intent to exclude a member's vote for company actions expelling said member under Section 8.6(e), any such evidence would be barred by the existence of the merger clauses contained in Section 10.10 of each Company Agreement, respectively.

[8]     *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005).

contracted wisely or foolishly and without regard to whether, in the light of subsequent events, a hardship was effected.[9] This result follows the rationale that contracting parties are considered masters of their own choices.[10] The parties are entitled to select the terms and provisions to include in their contract before executing it and, in so choosing, each is entitled to rely on the words selected to demarcate each party's respective obligations and rights.[11] The parties strike the deal they choose to strike, thus voluntarily binding themselves in their chosen manner.[12] Accordingly, the parties are bound by the terms of the Company Agreements as written.[13]

Finally, the Courts will not rewrite the parties' contracts or add to the language under the guise of "interpretation."[14] The Courts will not rewrite the Company Agreements to insert provisions that the parties could have included, nor imply any restraints for which the parties did not bargain, nor imply any terms merely to make the Company Agreements "fair," "wise," or "just" or imply

---

[9] *Dedier v. Grossman*, 454 S.W.2d 231, 235 (Tex. App.—Dallas 1970, writ ref'd n.r.e.).

[10] *Cross Timbers Oil Co. v. Exxon Corp.*, 22 S.W.3d 24, 26 (Tex. App.—Amarillo 2000, no pet.).

[11] *See id.*

[12] *See id.*

[13] *See id.*

[14] *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003); *LG Ins. Mgmt. Servs., L.P. v. Leick*, 378 S.W.3d 632, 638 (Tex. App.—Dallas 2012, no pet.).

restraints for which the parties did not bargain.[15] For a court to change the parties' contract merely because it does not like the contract, or because one party subsequently finds it distasteful, undermines the sanctity afforded a contract and the expectations of the persons who created and relied on it.[16]

## B. Finding of Facts and Conclusions of Laws

Finding of facts after a non-jury trial have the same force and effect as jury findings.[17] This Court reviews the Trial Court's FOF using the same standard of review it applies to the review of jury findings.[18] When an appellant attacks the legal sufficiency of an adverse finding on an issue for which it did not have the burden of proof, the appellant must demonstrate there is no evidence to support the adverse finding.[19] A legal sufficiency review of a no-evidence point must credit favorable evidence if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not.[20] This Court will only sustain a

---

[15]     *LG Ins. Mgmt. Servs., L.P. v. Leick*, 378 S.W.3d 632, 638 (Tex. App.—Dallas 2012, no pet.) (holding that the trial court's jury instruction that the remaining partners were required to act fairly and reasonably toward an involuntarily terminated partner "inserted an implied covenant into the contract").

[16]     *Natural Gas Clearinghouse v. Midgard Energy Co.*, 113 S.W.3d 400, 407 (Tex. App.— Amarillo 2003, pet. denied).

[17]     *Holliday v. Weaver*, 410 S.W.3d 439, 442 (Tex. App.—Dallas 2013, pet. filed).

[18]     *Id.*

[19]     *Pulley v. Milberger*, 198 S.W.3d 418, 426 (Tex. App.—Dallas 2006, pet. denied).

[20]     *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

no-evidence point when: (1) the Record discloses a complete absence of evidence of a vital fact; (2) the Court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or, (4) the evidence establishes conclusively the opposite of the vital fact.[21]

The trial court's conclusions of law are reviewed de novo.[22] We independently evaluate a trial court's conclusions to determine their correctness, and we will uphold conclusions on appeal if the judgment can be sustained on any legal theory supported by the evidence.[23] The appellant may not challenge a trial court's conclusions of law for factual insufficiency; however, the reviewing court may review the trial court's legal conclusions drawn from the facts to determine their correctness.[24]

The Finding of Facts and Conclusions of Law ("FOF") in the Original Lawsuit (DC-13-06030) found that the Written Consent was valid.[25] The Written Consent had the effect of an unanimous opinion by Section 5.11 of the Villas-

---

[21]     *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003) (per curiam).

[22]     *BMC Softward Belguim, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

[23]     *In re Moers*, 104 S.W.3d 609, 611 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

[24]     *Templeton v. Dreiss*, 961 S.W.2d 645, 656 n.8 (Tex. App.—San Antonio 1998, pet. denied).

[25]     Finding of Facts and Conclusions of Law (DC-13-06030), Conclusions of Law 10, Page 9.

Manager Company Agreement and BOC 101.359(2)(A).[26]  The Trial Court did not want to remove Chan Pak under 8.6(e) of the Villas-CSH Company Agreement if the Company Agreement was not followed.[27]  Not following the terms of the Company Agreement was grounds for the Trial Court to not enforce the removal of Chan Pak from Villas-CSH.  The Motion for Rehearing will highlight the facts that prove the Written Consent did not follow the Company Agreement and should not have been enforced by the Trial Court of this Court.

## C. Written Consent

The Written Consent was executed to remove Chan Pak as a co-manager, member, and officer of Villas-Manager.[28]  The Written Consent covered three different subject matters.   The removal of Chan Pak as a co-manager is under Section 3.5 of the Villas-Manager Company Agreement.[29]  The removal of Chan Pak as a member is under Section 8.6(e) of the Villas-Manager Company

---

[26]     Id.

[27]     Id., Finding of Fact 64, Page 7 and Id,. Conclusions of Law 12, page 9 (Trial Court refused to remove Chan Pak because Appellants did not take the apporiate actions under the terms of the company agreement).

[28]     Plaintiffs' Exhibit 40.  Pages 1-3

[29]     Plaintiffs' Exhibit 2, Page 9

Agreement.[30]  The removal of Chan Pak as an officer is under Section 3.16(d)(i) of the Villas-Manager Company Agreement.[31]

Appellees executed the Written Consent Villas-Manager without a notice of meeting, without a meeting, and without a vote.  Chan Pak did not consent as a member or a co-manager for any of the matters in the Written Consent for Villas-Manager.  There is no argument that Hugh Harrison was eligible to vote on all three removals.   Hugh Harrison never provided his signature (written consent) for the Written Consent.[32]  After the Written Consent was executed, Appellees provided notice to Chan Pak and Hugh Harrison.

## D.  Requirements of Villas-Manager Company Agreement

This Motion for Rehearing will only focus on the removal of Chan Pak as a co-manager and member of Villas-CSH for the Written Consent.  Removal of Chan Pak as a co-manager under section 3.5 of the Villas-Manager Company Agreement would require a meeting and a vote of the Majority of the Members.[33] Removal of Chan Pak as a member under Section 8.6(e) would require the

---

[30]     Id., Page 26

[31]     Id., Page 13

[32]     Plaintiffs' Exhibit 40, Page 4 (Hugh Harrison signature line is blank, no other exhibit providing his signature for the Written Consent)

[33]     Plaintiffs' Exhibit #2, Page  9.

Managers to agree to expel the member and the Majority of the remaining Members to vote to expel such a Member.[34]

The Second Amendment for the Villas-Manager Company Agreement changed the requirement of majority of managers. Any act under the Company Agreement requiring a vote Majority of the Managers shall be amended to require the unanimous consent of the Managers.[35] Section 8.6(e) clearly states Managers must elect to remove a member for violating the contract.[36] Second Amendment makes it clear that action must have the unanimous consent of the Managers.

Meetings would be required for the removals of Chan Pak as a co-manager or member of Villas-Manager. Section 3.5 and 8.6(e) of the Villas-Manager Company Agreement requires the members to make a vote on each matter.[37] A meeting would need to take place in order to get the votes of the members. If a meeting needs to take place, then Section 5.4 of the Villas-CSH Company Agreement requires a notice of meeting.[38] The votes required by Section 3.5 and 8.6(e) of the Villas-Manager agreement would then be regulated by Sections 5.5

---

[34]     Id., Page 26.

[35]     Plaintiffs' Exhibit #7, Section B (2) of the Second Amendment to the Company Agreement of Villas on Raiford, LLC, page 1.

[36]     Plaintiff's Exhibit #2, Page 26

[37]     Id., Pages 9, 26.

[38]     Id., Page17.

(Quorum) and Section 5.8 (Conduct of Meetings).[39] Appellees did not provide Chan Pak or Hugh Harrison a notice of meeting, meeting, or a vote. Appellees claimed to use Section 5.11 of the Villas-Manager Company Agreement to avoid the requirements in the Company Agreement.

There is no section in the Villas-Manager Company Agreement that excludes Chan Pak as a co-manager from voting on the removal of Chan Pak as a member (8.6(e) does mention that the remaining members vote but does not mention any exclusion of a manager or co-manager vote). There is no section in the Villas-Manager Company Agreement that excludes Chan Pak as a member of Villas-Manger from voting on the removal of Chan Pak as a co-manager to Villas-Manager. Written Consent states it excludes the Interest of Chan Pak.[40] There is nothing stated in the Written Consent that shows the justification for excluding the Interest of Chan Pak. In addition, Interest is defined in the Villas-Manager Company Agreement meaning "the percentage of ownership interest of a Member of Company at any particular time, as indicated on Schedule 1 attached hereto."[41] Chan Pak's Interest in Villas-Manager and his position as a co-manager are two separate things. Following the terms of the Villas-Manager Company Agreement,

---

[39]     Id. Page 17.

[40]     Plaintiffs' Exhibit 40, title of the document states that Chan Pak Interest is excluded.

[41]     Plaintiffs' Exhibit 2, Section 1.1(q) page 3

Chan Pak is an eligible member to vote on the removal of Chan Pak as a co-manager and Chan Pak is eligible as a co-manager to vote on the removal of Chan Pak as a member in Villas-Manager.

**E.  Section 5.11 of the Villas-Manager Company Agreement**

If Section 5.11 of the Villas-Manager Company Agreement is followed correctly, actions can take place without a meeting, notice of meeting and a vote. The Trial Court and this Court agreed that the Written Consent was effective.   The Written Consent should fail because it did not follow the requirements of Villas-Manager Company agreement (notice of meeting, meeting, and vote) and also failed to follow Section 5.11 that would negate the requirements.

Any action "may be taken without a meeting, without prior notice, and without a vote if a written consent or consents in writing, setting forth the action so taken, shall be signed by the Members entitled to vote with respect to the action that is the subject matter of the Consent, and such consent shall have the same force and effect as a unanimous vote of the Members."[42]   Therefore, to remove the requirements of meeting, notice of meeting, and a vote, an action without meeting needs to be signed by "the Members entitled to vote" on that subject matter.   To further prove this point, the Company Agreement says that a consent signed by the

---

[42]     Plaintiffs' Exhibit #2, page 18

Members entitled to vote will be treated as a "unanimous vote".[43]  Only a written consent that is like a "unanimous vote" would be allowed to negate the requirements of a notice of meeting, meeting, and a vote.   Appellees did not have a written consent that was a unanimous vote and it did not even have a majority vote if Chan Pak membership in Villas-Manager is included.

An action without meeting to remove Chan Pak as a co-manager would require the signatures of Chan Pak, Hugh Harrison, Jang Wook Lee, and Hyo Nam Han (as each of these members would be entitled to vote on Section 3.5).   An action without meeting to remove Chan Pak as a member of Villas-Manager would require the approval of the unanimous approval of the Managers and the signatures of every member entitled to vote.   The members entitled to vote for Chan Pak removal as a member of Villas-Manager under Section 8.6(e) would be Jang Wook Lee, Hyo Nam Han, and Hugh Harrison.

Even if Chan Pak co-manager interest and membership to be withheld from the requirement, the Written Consent would fail to negate the requirements of notice of meeting, meeting, and a vote because it did not provide Hugh Harrison's signature/written consent.[44]   Every eligible member signature was not in the Written Consent.   Therefore, the requirements of notice of meeting, meeting, and

---

[43]      Id.

[44]      Plaintiff's Exhibit 40, page 4 (blank signature line for Hugh Harrison and no other exhibit provided Hugh Harrison written consent for the Written Consent)

voting were still in effect. Appellees never provided a notice of meeting a meeting, or any votes (there would need to be 2 separate votes) on the removal of Chan Pak as a co-manager or member of Villas-Manager to Chan Pak or Hugh Harrison. Chan Pak was denied his chance to voice his concerns at a meeting and to vote at a meeting.

There should have been at least one notice of meeting (all three votes could have been held at the same meeting), at least one meeting, and three separate votes (separate vote to remove Chan Pak as a co-manager, member, and officer). Appellees instead provided zero notice of meetings, zero meetings and zero votes. An action without meeting following Section 5.11 does not remove the need of Chan Pak's approval/consent as a Manager to remove himself as a member. An action without meeting following section 5.11 does not remove the need for Chan Pak to vote as a member to remove Chan Pak as a co-manager. The Written Consent fails to remove the requirements for notice of meeting, meeting, and a vote because the Written Consent does not have the required signatures for the removal of Chan Pak as a co-manager of Villas-Manager or a member of Villas-Manager. Without following the terms and requirements of the Villas-Manager Agreement, Appellees should not be allowed to disregard the Villas-Manager Company Agreement requirements and the Written Consent should fail for not

getting every eligible member signature regarding removal of Chan Pak as a co-manager and as a member of Villas-Manager.

### F. Last sentence of Section 5.11

The last sentence of Section 5.11 of the Villas-Manager Company Agreement states, "Prompt notice of the taking of any action by Members without a meeting by less than unanimous consent shall be given to those Members who do not consent in writing to the action."[45]   This Court stated the last sentence meant there could be actions without a meeting that are not unanimous (majority action without a meeting).[46]  Following general principles of contract law, the language of the contract must be followed to enforce the contract.  The first sentence of Section 5.11 Villas-Manager Company Agreement discusses a written consent that requires every eligible person to consent to it to negate the requirements of meeting, notice of meeting and vote.[47]   The last sentence of Section 5.11 states that an action without meeting does not have to be unanimous but it only discusses an action by Section 5.11 regarding notice.[48]   Even though there is conflict, the language is clear in the section before the last sentence of Section 5.11.   In order to bypass the

---

[45]     Plaintiffs' Exhibit #2, page 18

[46]     Memorandum Opinion on Remand, Pages 8-10

[47]     Plaintiffs' Exhibit #2, page 18

[48]     Id.

requirements of notice of meeting, meeting, and a vote, every eligible member must sign the written consent.[49]

There is nothing in Section 5.11 that says a majority action without a meeting negates the requirements of a notice of meeting, meeting, and a vote. Section 5.11 only states prompt notice needs to be sent of any action by less than unanimous written consent. The clear and plain language of what is required to negate the requirements of Villas-Manager Company Agreement cannot be ignored because Section 5.11 states the "prompt notice of any action by Members without a meeting by less than unanimous written shall be given to those Members who do not consent in writing to the action."[50] Also the last sentence of Section 5.11 states that the notice is sent to members who do not consent in writing to the action. Notice is not being sent to members who are not aware but to members who do not consent in writing to the action that took place without a meeting.

## G. BOC 101.359

The first sentence of BOC 101.359 states, "Members or managers of a limited liability company may take action at a meeting of the member or manager or without a meeting in any manner permitted by this Title, or the governing

---

[49] Id.

[50] Plaintiff's Exhibit 2, Page 18

document of the company."[51]  Appellees use BOC 101.359 according the governing document of the Villas-Manager.   Appellees attempted to remove Chan Pak as a co-manager under Section 3.5 of the Villas-Manager Company Agreement.   Appellants attempted to remove Chan Pak as a member of Villas-Manager under Section 8.6(e) of the Company Agreement.   Appellees wanted to enact Section 3.5 and Section 8.6(e) of the Company Agreement without the meeting, notice of meeting, and vote requirements.   Appellees attempted to use Section 5.11 of the Villas-Manager Company Agreement to avoid the meeting, notice of meeting, and vote requirement.

Appellees failed to follow Section 5.11 which made the Written Consent in violation of the Villas-Manager Company Agreement.   Appellees did not have a meeting, notice of meeting or a vote as required by the Villas-Manager Company Agreement concerning the removal of Chan Pak as a member or co-manager of Villas-Manager.  Appellees argued the Written Consent negated the requirements. The only way to negate those requirements was to get every member entitled to vote to have a written consent/signature in the Written Consent.[52]   Chan Pak and Hugh Harrison signatures are not in the Written Consent.  There is no justification

---

[51]     Tex. Bus. Orgs. Code Ann. § 101.359

[52]     Plaintiff's Exhibit #2, Section 5.11 page 18 (Section 5.11 states an action without meeting "shall be signed every Member entitled to vote with respect to the action that is the subject matter of the consent."

in the Written Consent that explains the omissions of the signatures. BOC 101.359 only provides member consents, it does not state it provide manager or co-manager consent. Removal of Chan Pak as a member of Villas-Manager would require the Managers to agree. Appellees cannot use 101.359 to replace the consent of a co-manager.[53] BOC 101.359 should be used to consent to actions that were properly done and valid. Instead Appellees want to use BOC 101.359 to fill in the requirements Appellees failed to have at the time of the Written Consent.

**H. Written Consent and BOC 101.359 do not replace requirements**

Trial Court found Written Consent valid for the removal of Chan Pak as a co-manager and member of Villas-Manager.[54] This Court overruled the Trial Cout and found that the December 31, 2013 Event of Purchase for Chan Pak's Membership Interest was valid.[55] Trial Court and this Court relied on the Written Consent being valid and BOC 101.359 providing the consents for the Written Consents. The Written Consent and BOC 101.359 cannot replace the requirements needed to have an effective action without meeting and Event of Purchase.

---

[53] Tex. Bus. Orgs. Code Ann. § 101.359(a)(2) only provides member consents if member did not object to the action. It does not state it provides Manager or Co-manager consent.

[54] Finding of Facts and Conclusions of Law (DC-13-06030), Conclusions of Law No. 10, Page 9.

[55] Memorandum Opinion on Remand (05-14-01312-CV), Page 18.

Section 5.11 only addresses member's consent and does not discuss co-manager approval at all. Section 5.11 cannot be used to provide Chan Pak's co-manager approval. Chan Pak and Hugh Harrison in essence received a notice of a majority action without a meeting that did not meet the requirements to avoid holding a meeting, a notice of meeting, and a vote. In addition, it did not have the requirements to even consent on the removal on Chan Pak as a member on Section 8.6(e) since the Managers needed to agree on it first.[56] Even though it was labeled majority of members and managers it did not have a majority of members (quorum) if Chan Pak membership interest is included. It had a majority of member for Chan Pak removal as a member, but it still did not have his co-manager consent or approval. It did not have a majority of members for Chan Pak's removal as a co-manager in Villas-Manager.

No member of a LLC should have to write a written objection to an action that was not properly done. If this was true, anytime someone did an improper action, the other party would consent to it if the other party did not provide a written objection in time after notification. One party should not be allowed to enforce the contract on another party without following the contract. The action has to be proper and valid for BOC 101.359 to apply or it would leave room for BOC 101.359 to be abused.

---

[56] Plaintiffs' Exhibit #2, Page 26.

### I. Appellees could have a called a meeting and followed the Company Agreement.

Section 5.3 of the Villas-Manager Company Agreement allows the Managers or holders of not less than twenty percent of all Membership Interest to call Special Meetings (Hyo Nam Han and Jang Wook Lee could have asked for a special meeting together).[57] Appellees then would have needed to provide a notice of the meetings to the members. And then at the meeting, Appellees would need to take a vote for each removal (co-manager, member, and officer). Appellees wanted to forego the requirements of notice of meeting, meeting, and vote. The only way to do that under Section 5.11 of the Villas-Manager Company Agreement would be to get the written consent of every person eligible to vote. Appellees failed to do that. Appellees use of 5.11 prevented Chan Pak and Hugh Harrison from raising objections at the meeting or casting their votes.

### J. If the Written Consent is not valid then Chan Pak removal from Villas-CSH is not valid

For Chan Pak to be removed from Villas-CSH, it would require the unanimous vote from all the other members.[58] Villas-CSH Section 8.6(e) is different from Villas-Manager 8.6(e). Section 8.6(e) of the Villas-Manager

---

[57]     Plaintiff Exhibit #2, Page 16

[58]     Plaintiff's Exhibit #8, Section 8.6(e), Pages 28-29.

Company Agreement required the Managers' approval and the majority vote of the remaining members.[59] Section 8.6(e) of the Villas-CSH Company Agreement required the Managers approval and the "remaining Members unanimously vote to expel such Member."[60] If the Written Consent involving Chan Pak membership interest is not valid, Chan Pak could block his removal membership removal in Villas-CSH with the membership vote in Villas-Manager or his co-manager vote in Villas-Manager. The attempt to remove Chan Pak as a member of Villas-CSH came before any injunction was placed by the Trial Court. If the Written Consent was not valid, Chan Pak could also block Section 8.6(e) removal of Chan Pak membership interest in Villas-CSH as a co-manager.[61]

## K. Villas-CSH damages should be vacated

If Chan Pak is found to be a member of Villas-CSH, then the damages awarded to Villas-CSH from Chan Pak should be vacated. The permanent injunction from the Modified Final Judgment prevented Chan Pak from being involved with the management of Villas-CSH and the leasing and management of Villas on Raiford Apartment complex.[62] The Permanent Injunction did not

---

[59] Plaintiffs' Exhibit #2, Page 26

[60] Plaintiffs' Exhibit #8, Pages 28-29

[61] Id. Removal of a member requires the approval of the Managers.

[62] Modified Final Judgment , Including Permanent Injunction (DC-13-06030), Page 3

prevent Chan Pak from using his member right on activities outside the operation of the apartment. There is no mention of member rights being restrained by the permanent injunction. Filing a lawsuit would fall under Section 3.1(b) of the Villas-CSH Company Agreement.[63] Any decision by Villas-CSH under Section 3.1(b) required the Unanimous vote of the co-manager[64] and the Super Majority of the Members.[65] If Chan Pak is found to be a member of Villas-CSH, Appellees did not have the proper authorization to file a lawsuit against Chan Pak. As discussed earlier in the contract law, the contract should be interpreted as it was written. There is no section in the Villas-CSH Company Agreement that precludes Chan Pak's approval as a member on a lawsuit against Chan Pak from Villas-CSH. The Super Majority of the members could not agree without Chan Pak's membership interest. The timing was not right for Villas-CSH claims because Chan Pak's membership interest was still in discussion. A determination about Chan Pak's membership interest should have been made before the Villas-CSH claims against Chan Pak were added to the Original Lawsuit.

## L. No public harm (Public Interest)

---

[63] Plaintiff's Exhibit 8, page 7-9, specifically 3.1(b)(viii) enter into any transaction that would result, individually or in the aggregate, in the expenditure and/or incurrence of debt by Company in an amount exceeding $5,000.

[64] Plaintiffs' Exhibit #7, Section B (2) of the Second Amendment to the Company Agreement of Villas on Raiford, LLC, page 1.

[65] Plaintiff's Exhibit 8, Section 3.1(b) pages 7-8, Appellant Amended Brief, Page 23

Even though Chan Pak is stating Chan Pak should still be a co-manager and member of Villas-Manager and a member of Villas-CSH, it will not provide any harm to the Villas on Raiford Apartment complex. The injunction from the Modified Final Judgment will still be in place and the injunction prevents Chan Pak from being involved in the management of Villas-Manager. The injunction also restricts him from contacting the management company in charge of the Villas on Raiford apartment complex, participating in leasing any units in the Villas on Raiford apartment complex, and attempting to sell the any real property or assets owned by Villas-CSH.[66] Chan Pak does not have any influence on how the Villas on Raiford apartment complex is being managed or leased. The injunction states nothing about the member rights of Chan Pak in Villas-Manager or Villas-CSH. Chan Pak is only claiming to be able to make member votes in Villas-Manager and Villas-CSH that do not involve the leasing of the apartment complex. The company agreements provide further protection because the company agreements require member and co-manager agreement for any major action. There is no public danger in having Chan Pak be a co-manager, member of Villas-Manager, and a member of Villas-CSH with the injunction in place and the requirements of the company agreements.

---

[66]    Modified Final Judgment, Including Permanent Injunction (DC-13-06030), Page 3

# PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Appellant/Cross-Appellee

Chan Pak respectfully requests this Honorable Court grant the petition for

rehearing, vacate its opinion, withdraw its judgment and issue a revised opinion

and judgment holding that September 22, 2013 Written Consent was not valid,

Chan Pak remains a co-manager and member of Villas-Manager, Chan Pak retains

his membership interest in Villas-CSH, damages awarded to Villas-CSH against

Chan Pak are vacated.

Respectfully submitted,


By:    /s/ Chan I. Pak
        Chan I. Pak
        Appellant/Cross-Appellee

        2313 Incline Dr
        Carrollton, TX 75006
        Tel. (469) 767-4907
        E-mail cip11111@gmail.com

        Pro Se Litigant

## CERTIFICATE OF SERVICE

This shall certify that a true and correct copy of the foregoing document has been served electronically through the State's electronic manager to William F. Lepage at lepage@sbep-law.com on this 5th day of June, 2018.

_/s/ Chan I. Pak_____
Chan I. Pak

Appellant/Cross-Appellee
Pro Se Litigant

## CERTIFICATE OF COMPLIANCE

In compliance with Texas Rules of Appellate Procedure 9.4(i)(2), this brief contains 4,293 words as counted by Microsoft Word word count utility, excluding the portions of the brief exempted by Rule 9.4(i)(1).

_/s/ Chan I. Pak_____
Chan I. Pak